ProSe

# U.S. District Court
## California Northern District (Eureka)
## CIVIL DOCKET FOR CASE #: 1:26-cv-02267-RMI

Hahn v. Open Door Community Health Centers et al
Assigned to: Magistrate Judge Robert M. Illman
Demand: $1,000
Case in other court:  Humboldt Superior Court, CV2600214
Cause: 42:1396 - Tort Negligence

Date Filed: 03/16/2026
Jury Demand: Plaintiff
Nature of Suit: 245 Tort Product Liability
Jurisdiction: Diversity

### Plaintiff

**Charles Hahn**                                                                represented by  **Charles Hahn**
                                                                                                              PRO SE

### V.
### Defendant

**Open Door Community Health Centers**
*A California Corporation*

### Defendant

**Trizetto Provider Solutions, LLC**                                      represented by  **Yi Yang**
*A Delaware limited liability company*                                               Norton Rose Fulbright US LLP
                                                                                                              555 S. Flower St.
                                                                                                              41st Floor
                                                                                                              Los Angeles, CA 90017
                                                                                                              213-892-9311
                                                                                                              Email: eva.yang@nortonrosefulbright.com
                                                                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/16/2026 | 1 | NOTICE OF REMOVAL *of Class Action* from Humboldt Superior Court. Their case number is CV2600214. (Filing fee $405 receipt number ACANDC-21759198). Filed by Trizetto Provider Solutions, LLC. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - Notice of Service of Process)(Yang, Yi) (Filed on 3/16/2026) (Entered: 03/16/2026) |
| 03/16/2026 | 2 | Corporate Disclosure Statement by Trizetto Provider Solutions, LLC identifying Corporate Parent Cognizant Technology Solutions Corporation, Corporate Parent Cognizant Domestic Holdings Corporation, Corporate Parent Cognizant TriZetto Software Group, Inc for Trizetto Provider Solutions, LLC. (Yang, Yi) (Filed on 3/16/2026) (Entered: 03/16/2026) |
| 03/16/2026 | 3 | Case assigned to Magistrate Judge Robert M. Illman. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 3/30/2026. (mbc, COURT STAFF) (Filed on 3/16/2026) (Entered: 03/16/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/17/2026 11:20:38 | | | |
| **PACER Login:** | CCMS0034 | **Client Code:** | Cognizant |
| **Description:** | Docket Report | **Search Criteria:** | 1:26-cv-02267-RMI |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**NORTON ROSE FULBRIGHT US LLP**
EVA YANG (BAR NO. 306215)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
eva.yang@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
JASON K. FAGELMAN (*Pro Hac Vice Application Forthcoming)*
JOSEPH E. SIMMONS (*Pro Hac Vice Application Forthcoming*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
jason.fagelman@nortonrosefulbright.com
joseph.simmons@nortonrosefulbright.com

*Attorneys for TriZetto Provider Solutions, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HAHN,<br><br>Plaintiff,<br><br>v.<br><br>OPEN DOOR COMMUNITY HEALTH CENTERS, a California corporation; TRIZETTO PROVIDER SOLUTIONS, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-2267<br><br>**DEFENDANT TRIZETTO PROVIDER SOLUTIONS, LLC'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(From the Superior Court of California, Humboldt County, Case No. CV2600214)<br><br>Date of Filing:     February 2, 2026<br>Date of Removal:  March 16, 2026<br>Trial Date:        None |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, 1711, Defendant TriZetto Provider Solutions, LLC hereby removes to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. CV2600214 in Humboldt County Superior Court, State of California. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

This putative class action was filed by Plaintiff Charles Hahn ("**Plaintiff**") against Open Door Community Health Centers ("**Open Door**"), TriZetto Provider Solutions, LLC ("**TriZetto**"), and Does 1 through 100, inclusive, in the Superior Court of the State of California, County of Humboldt, and is captioned *Charles Hahn v. Open Door Community Health Centers, et al.*, Case No. CV2600214. A copy of the complaint is attached hereto as **Exhibit A** ("**Complaint**"). This action is thus properly removed to the United States District Court for the Northern District of California, which embraces Humboldt County within its jurisdiction. 28 U.S.C. §§ 1441(a), 1446(a).

Pursuant to 28 U.S.C. § 1446(b), a notice of removal must be filed within thirty (30) days of service of the initial pleading setting forth the claim for relief upon which such action is based. TriZetto was served with the Summons and Complaint on February 12, 2026. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon TriZetto in the state court action are attached hereto as **Exhibit B**. This Notice of Removal is therefore timely filed within thirty (30) days of service. TriZetto will provide prompt written notice to Plaintiff and is filing a copy of this notice with the clerk of the Superior Court of California for the County of Humboldt pursuant to 28 U.S.C. § 1446(d).

## II. SUMMARY OF ALLEGATIONS

Plaintiff alleges that he is a resident of the State of California and that he provided his personal information to Open Door and Trizetto. Compl. ¶ 19. He alleges that Open Door is a

community health organization based and incorporated in California. *Id.* ¶ 21. He alleges that TriZetto is an information technology services provider with its principal place of business in Missouri. *Id.* ¶ 22. Plaintiff alleges that on or about January 7, 2026, Open Door and TriZetto notified him of a data incident that "may have involved some of your personal health information." *Id.* ¶ 31. Plaintiff purports to represent a class of California citizens whose personal information was allegedly involved in the data incident. *Id.* ¶ 94. He alleges that the total number of class members exceeds 500 persons. *Id.* ¶ 95.

Based on the alleged data breach, Plaintiff asserts claims for: (1) violation of the California Confidentiality of Medical Information Act ("CMIA"); (2) violation of the California Consumer Privacy Act ("CCPA"); (3) violation of the California Privacy Rights Act ("CPRA"); (4) negligence; and (5) negligence per se. *Id.* ¶ 102-145. Plaintiff seeks, on behalf of himself and the putative class, statutory and nominal damages of $1,000 per violation under the CMIA; statutory damages of $100 to $750 per consumer per incident, or actual damages, whichever is greater, under the CCPA; compensatory and punitive damages; injunctive and equitable relief; and attorneys' fees and costs. *Id.* ¶¶ 108, 110 (statutory damage amounts); *id.* at 31-32 (prayer for relief).

## III.   **GROUNDS FOR REMOVAL**

This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). A removal notice need not be supported with evidence, and is only required to "allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). Here, removal is appropriate because: (A) the proposed class consists of more than 100 members; (B) TriZetto and Plaintiff are not citizens of the same state; and (C) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Accordingly, this action is removable pursuant to 28 U.S.C. §§ 1441 and 1446.

### A. The Proposed Class Consists of More than 100 Members

Federal jurisdiction under CAFA requires a proposed class of at least 100 members. 28 U.S.C. § 1332(d)(5)(B). Plaintiff defines the proposed class as "All citizens of the State of California who provided their personal medical information to Defendants on or before October 2, 2025, and who received notices from Defendants that their information was compromised." Compl. ¶ 94. Plaintiff expressly alleges that the proposed class consists of more than 500 individuals. Accordingly, the proposed class plainly satisfies CAFA's numerosity requirement of at least 100 members. 28 U.S.C. § 1332(d)(5)(B).

### B. TriZetto and Plaintiffs are Not Citizens of the Same State

Federal jurisdiction under CAFA requires only "minimal diversity," meaning that at least one member of the proposed plaintiff class must be a citizen of a state different from at least one defendant. 28 U.S.C. § 1332(d)(2)(A). The pleadings and undisputed facts show that the diversity requirement is met here. The proposed class is defined to consist solely of California citizens. *Id.* ¶ 94. Thus, at least one member of the proposed class is a citizen of California. In contrast, TriZetto has its principal place of business in Missouri, and is a Delaware limited liability company whose sole member is Cognizant TriZetto Software Group, Inc., a Delaware corporation with its principal place of business in Colorado. Thus, TriZetto is a citizen of a state other than California.

### C. The Amount in Controversy Exceeds $5 Million

The final requirement for federal jurisdiction under CAFA is that the aggregate amount in controversy for all class members exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the Plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). When the amount in controversy is not stated expressly and must be inferred from the allegations in the complaint, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

Here, Although TriZetto denies any liability and disputes that Plaintiff or any putative class member suffered any cognizable damages, the claims as pleaded, given reasonable assumptions, place an amount well in excess of $5,000,000 in controversy.

First, Plaintiff seeks damages on behalf of a putative class allegedly containing at least 500 members. These purported damages include:

- Statutory damages of $1,000 in CMIA damages, Compl. ¶ 108;

- Statutory damages of up to $750 in CCPA damages, *id.* ¶ 110; and

- Actual damages of an unspecified amount, but potentially "up to $1,000," which Plaintiff alleges is the value of the information involved, *id.* ¶ 84.

Second, Plaintiff seeks attorney fees. A plaintiff's claim for attorneys' fees are also included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). That includes future attorneys' fees that are claimed, but not accrued at the time of removal. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794-96 (9th Cir. 2018). Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013).

Third, Plaintiff seeks a highly burdensome injunction regarding TriZetto's internal data security practices. The "cost of complying with an injunction" is included in the amount in controversy. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016). Here, Plaintiff seeks a court order requiring TriZetto to "engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors"; "engage third-party security auditors and internal personnel to run automated security monitoring"; "audit, test, and train their security personnel regarding any new or modified procedures"; "segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to

other portions of Defendants' systems"; "purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services"; "conduct regular database scanning and securing checks"; "routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach"; and "meaningfully educate their current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial. and personal information to third parties, as well as the steps they must take to protect themselves." Compl. at 31-32. The costs of compliance with such a highly burdensome long-term injunction would be significant, and on its own may exceed $5,000,000.

Combining alleged damages, potential attorney's fees, and the costs of complying with the requested injunction, the amount in controversy easily exceeds $5 million.

### D. No CAFA Exceptions Apply

Because the class size, minimal diversity, and amount in controversy requirements are met, this Court has CAFA jurisdiction. 28 U.S.C. § 1332(d)(2), (d)(5)(B). The CAFA "local controversy" and "home state" exceptions are "not jurisdictional." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013). Before this Court can decline jurisdiction under one of the CAFA exceptions, Plaintiff bears the "burden of proof" to show by "a preponderance of the evidence" that the exception applies. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013). Plaintiff will be unable to do so:

The "local controversy" exception cannot apply because it requires that "less than two-thirds of the members" of the proposed class be citizens of the forum state. 28 USC § 1332(d)(3). Here, the proposed class is defined to include only California citizens, thus precluding application of the "local controversy" exception.

The "home state" exception also cannot apply, for two reasons. First, because similar actions have recently been filed elsewhere. 28 USC § 1332(d)(4)(A)(ii). Specifically, there have been multiple putative class actions based on the same underlying data incident, the first-filed of which, *Longo v. TriZetto Provider Solutions*, Cause No. 4:25-cv-01845 (E.D. Mo., Dec. 17, 2025), was filed a month and a half prior to the removed action. Second, because this exception

requires that all "primary defendants" are citizens of the forum state, 28 USC § 1332(d)(4)(B), and TriZetto is not a citizen of California.

In sum, removal was proper—and Plaintiff lacks any basis for seeking remand.

## IV. CONCLUSION

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of Humboldt to the United States District Court for the Northern District of California.

Dated: March 16, 2026

EVA YANG
NORTON ROSE FULBRIGHT US LLP

By: _____
    EVA YANG
Attorneys for Defendant

# EXHIBIT A

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317);
James M. Treglio (SBN 228077);
Isabel Rose Masanque (SBN 292673)
classactions@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs

**FILED**

J.

F FEB 0 2 2026

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF HUMBOLDT

| | |
|---|---|
| CHARLES HAHN , individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPEN DOOR COMMUNITY HEALTH CENTERS, California Corporation; TRIZETTO PROVIDER SOLUTIONS, LLC, a Delaware Limited Liability Company ; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C V 2 6 0 0 2 1 4<br><br>**CLASS ACTION**<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>(1) **THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ.*);**<br>(2) **CALIFORNIA CONSUMER PRIVACY ACT § 1798.150;**<br>(3) **CALIFORNIA PRIVACY RIGHTS ACT; and**<br>(4) **NEGLIGENCE; and**<br>(5) **NEGLIGENCE PER SE.**<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint

FAX FILED

Class Representative CHARLES Hahn ("Class Representative" or "Plaintiff"), by and through her attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

## I.

## INTRODUCTION

1. Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff and all other persons similarly situated, had a right to keep their personal medical information provided to Defendant Open Door Community Health Centers, California Corporation ("Open door" or "Defendant"); Trizetto Provider Solutions, LLC, a Delaware Limited Liability Company ("TriZetto" or "Defendant") and Does 1 through 100 (collectively, "Defendants") confidential. The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a). The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

2. Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by

specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount of actual damages, if any, sustained by the patient." (Emphasis added.)

3. This class action is brought on behalf of Plaintiff and a putative class defined as all citizens of the State of California who provided their personal medical information to Defendants on or before October 02, 2025, and who received notices from Defendants that their information was compromised ("Breach Victims," the "Class," or the "Class Members").

4. As alleged more fully below, Defendants created, maintained, preserved, and stored Plaintiff's and the Class members' personal medical information onto the Defendant's computer network prior to October 02, 2025. Due to Defendant's mishandling of personal medical information recorded onto the Defendants' computer network, there was an unauthorized release of Plaintiff's and the Class members' confidential medical information that occurred on or about October 02, 2025, in violation of Civil Code § 56.101 of the Act.

5. As alleged more fully below, Defendants negligently created, maintained, preserved, and stored Plaintiff's and the Class members' confidential medical information in a non-encrypted format onto a data server which became accessible to an unauthorized person, without Plaintiff's and the Class members' prior written authorization. This act of providing unauthorized access to Plaintiff's and the Class Members' confidential medical information onto the internet continuously constitutes an unauthorized release of confidential medical information in violation of Civil Code § 56.101 of the Act. Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Class Representative, individually and on behalf of others similarly situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1).

6. The PII disclosed in the Data Breach is also protected by the California Consumer Privacy Act of 2018 ("CCPA"). For purposes of CCPA Section 1798.150, "personal information"

is defined as an individual's first name or first initial and his or her last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (1) social security number; (2) driver's license number or California ID card number; (3) account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account; (4) medical information; and/or (5) health insurance information.[1]

7. Here, unencrypted names were revealed along with account information that would permit access to individuals' financial and other accounts across the web. According to Defendants' notice to Plaintiff dated January 07, 2026("Notice"), the PII subjected to unauthorized access and exfiltration, theft, or disclosure in the Data Breach may have included the Class Members' "Full name, Address, Date of Birth, Social Security Number (SSN); Health Insurance Information, provider name, primary insured or dependent information, and other demographic information " In combination, those pieces of PII could permit access to other accounts using similar or the same information, including financial accounts.

8. When nonencrypted and nonredacted personal information defined in Section 1798.150 is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures, the CCPA explicitly authorizes private litigants to bring individual or class action claims.[2]

9. Defendants have failed to maintain reasonable security controls and systems appropriate for the nature of the PII it maintains as required by the CCPA and other common and statutory laws. According to one blogger for the International Association for Privacy Professionals, "encryption is a security strategy…[that] protects your organization from scenarios like a devastating breach where, if the adversary were to gain access to your servers, the data stored would

---

[1] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

[2] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

3

be of no use to them, unless they have the encryption key. It's an all-or-nothing security posture: You either get to see the data unencrypted, or you don't."[3] "[O]rganizations should encrypt their data on a disk as a required security measure. But they must not stop there. In fact, the CCPA is clear that they should go further." *Id.*

10. Defendants also failed to maintain proper measures to detect hacking and intrusion. According to its Notice to affected customers, "We are writing to inform you of recent data Breach incident at TriZetto Provider Solutions that may have involved some of your personal and / or protected health information….. TriZetto is a data clearinghouse vendor for OCHIN Epic., operators of our electronic health record system…… On October 2, 2025, TriZetto discovered that n unauthorized third party gained access to their network on or about November 2024 leading to a security incident involving some of our patients. The breach/unauthorized access was contained on or about October 2, 2025. ." However, it is unclear how long ago these information have been posted on the dark web. As explained below, Defendants should have had breach detection protocols in place. If they had, they could have learned of the breach and alerted customers much sooner after they discovered the Data Breach.

11. Nearly all "best practices" security frameworks, e.g., the U.S. National Institute of Standards and Technology's (NIST) Special Publication 800, require log aggregation, log monitoring, and automated intrusion detection systems that alert a company of unauthorized access or the anomalous use of hacked user accounts. Had Defendants properly deployed those industry standard systems, the breach might not have occurred or, if it had, Defendants would have promptly detected it.

12. Defendants claim that, "Measures were taken immediately in response and a thorough investigation was conducted to determine what occurred." But the viewing, theft, and attempted sale of California consumers' PII on the dark web has already occurred and cannot be cured.

13. Defendants disregarded Plaintiff's and Class members' privacy rights in the PII by,

---

[3] Tuow, Steve, Encryption, redaction and the CCPA, available at https://iapp.org/news/a/encryption-redaction-and-the-ccpa/ (last accessed July 14, 2022).

among other things, (i) failing to implement reasonable security safeguards to prevent or timely detect the Data Breach; (ii) failing to detect the Data Breach when or after it occurred; (iii) failing to disclose to customers that it did not implement such reasonable security safeguards; and (iv) failing to provide sufficiently prompt, thorough, and accurate notice and information about the Data Breach.

14. As a result of the Data Breach, Plaintiff and the Class have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was hacked and put up for sale on the dark web for purchase by malicious actors; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendant regarding data privacy.

15. This is likewise a class action alleging violations of the California Privacy Rights Act ("CPRA"), which expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

16. Plaintiff and Class members are therefore (i) entitled to actual and statutory damages under the CCPA and other laws, (ii) have incurred actual and concrete damages as a result of the unauthorized sale of their PII to malicious actors on the dark web, and (iii) face ongoing risks of disclosure of their PII in subsequent data breaches because Defendants have not demonstrated that they have implemented reasonable security systems and procedures. Plaintiff and Class members have a significant interest in the protection and safe storage of their PII. They are therefore entitled to declaratory, injunctive, and other equitable relief necessary to protect their PII. This includes, but is not limited to, an order compelling Defendants to adopt reasonable security procedures and practices to safeguard customers' PII and prevent future data breaches.

17. Class Representative does not seek any relief greater than or different from the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether

5

Class Action Complaint

pecuniary or non-pecuniary, for a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Class Representative's stake in the matter.

## II.

## JURISDICTION AND VENUE

18.	This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10. The aggregated amount of damages incurred by Plaintiff and the Class exceeds the $25,000 jurisdictional minimum of this Court. The amount in controversy as to the Plaintiff individually and each individual Class member does not exceed $75,000, including interest and any pro rata award of attorneys' fees, costs, and damages. Venue is proper in this Court under California Code of Civil Procedure §§ 395(a) and 395.5 because Defendants are registered and do business in the State of California and in the County of Humbolt. Defendants have obtained medical information in the transaction of business in the County of Humbolt which has caused both obligations and liability of Defendants to arise in the County of Humbolt.

## III.

## PARTIES

## A.	PLAINTIFF

19.	Class Representative Charles Hahn is a resident of the State of California. At all times relevant, Plaintiff was a patient of Defendants. The information provided by Plaintiff to Defendants included Plaintiff's medical information. Thus, Plaintiff was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendants in electronic form was in possession of Defendants, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and treatment dates. Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's identity. Since Defendants obtained Plaintiff's information, Plaintiff has experienced a noticeable increase in solicitations by e-mail, mail, and/or phone from third parties.

6

20. Plaintiff received from Defendants a notification that her personal medical information and personal identifying information were disclosed when an unauthorized person gained access to Defendants' servers.

**B.    DEFENDANT**

21. Defendant Open Door is nonprofit community health care organization in California. It is a California corporation with its principal place t of business located at 1275 8th St, Arcata, CA 95521. .

22. Defendant TriZetto is a U.S. healthcare information technology and services company with its principal place of business located at 3300 Rider Trail South, Earth City, MO 63045.

23. At all times relevant, Defendants are a "provider of health care" as defined by Civil Code § 56.05(m), or a contractor as defined by Civil Code §56.05(d). Prior to October 2, 2025, Defendants created, maintained, preserved, and stored Plaintiff's and the Class members' individually identifiable medical information onto Defendants' computer network, including but not limited to Plaintiff's and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates. Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's and the Class members' identities.

**C.    DOE DEFENDANTS**

24. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through

7

100 when such identities become known. Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

## D.   AGENCY/AIDING AND ABETTING

25.   At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

26.   Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## IV.

## FACTUAL ALLEGATIONS

### A.   The Data Breach

27.   Defendant Open Door Community Health Centers operates healthcare facilities in California that provide medical services to members of the community in California. Defendants gather information in order to provide these services. With data stored regarding patients, Defendants collect a significant amount of sensitive data from patients, as delineated above.

28.   Defendant TriZetto provides an end-to-end revenue cycle management for healthcare providers where they integrate electronic health records and practice management systems, and support compliance standards to help secure health data exchange and transactions in California.

29.   In order to perform these functions, Defendants regularly collect information, including personally identifiable information and medical information, including the diagnosis and

treatment plans. To that end, Defendants operate as either a contractor performing administrative functions, as described in Civil Code §§56.10 (d), 56.26, or a medical provider under Civil Code §56.05(m). Defendants are also considered a "recipient" of medical information as defined by Civil Code §56.13.

30. Whether deemed as a medical provider, contractor, administrator, or recipient, Defendants, who had access to mental health records (defined as "sensitive services" under Civil Code §56.05(n)), had an affirmative duty under Civil Code §§56.10 and 56.101 to not disclose the confidential medical record to anyone without proper authorization.

31. On or about January 7, 2026, Defendants issued a letter (the "Notice") to individuals, including Plaintiff, providing, for the first time, a notice of data breach "....of a recent event data security incident... that may have involved some of your personal health information (PHI)."

32. In the Notice, Defendants state that, "On October 2, 2025, TriZetto discovered that an unauthorized third party gained access to their network on or about November 2024 leading to a security incident involving some of our patients. The breach/unauthorized access was contained on or about October 2, 2025." (the "Data Breach").

33. The Notice went on to say that the affected information may include Class Members' "Full Name, Address, Date of Birth, Social Security Number (SSN); Health Insurance, information, provider name, primary insured or dependent information and other demographic information." Subsequently, Defendants determined that some of Plaintiff's information were present in the files that were illegally accessed from Defendants' server. By definition, the information the Notice states was affected by the breach included confidential medical information regarding "sensitive services." as defined by Civil Code §56.05(i) and (n).

34. Yet, despite knowing many patients were in danger, Defendants did not immediately discover the Data Breach after it occurred, and did nothing to warn Breach Victims until more than six months after the actual date of the Data Breach, an unreasonable amount of time under any objective standard. During this time, cyber criminals had free reign to surveil and defraud their unsuspecting victims. Defendants apparently chose to complete their internal investigation and

develop their excuses and speaking points before giving class members the information they needed to protect themselves against fraud and identity theft.

35. This was a staggering coup for cyber criminals and a stunningly bad showing for Defendants. And if those affected included minors, this data breach will likely affect them for their entire lives.

36. It is apparent from Defendants' Notice that the Personal and Medical information contained within the server was not encrypted or was inadequately protected.

37. In spite of the severity of the Data Breach, Defendants have done very little to protect Breach Victims. In the Notice, Defendants state that it is notifying Breach Victims and they encourage the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to review their account statements and explanation of benefits forms, and to monitor their free credit reports for suspicious activity, and to detect errors. In effect, shirking their responsibility for the harm they caused and putting them all on the Breach Victims.

38. Defendants failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information and use it for more than a month before Defendants warned the criminals' victims, the Breach Victims, to be on the lookout.

39. Defendants failed to spend sufficient resources on monitoring external incoming emails and training their employees to identify email-born threats and defend against them.

40. Defendants had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, their own contracts with their patients and employees, common law, and their representations to Plaintiff and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

41. Plaintiff and Class members provided their Personal and Medical Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

10

Class Action Complaint

42.   Indeed, as discussed below, Defendants promised Plaintiff and Class members that they would do just that.

**B   Defendants Expressly Promised to Protect Personal and Medical Information**

43.   In its Online Services Privacy practices[4], Defendants made the following pronouncements:

We are required by law to provide this information to all individuals that request and obtain services at Open Door Community Health Centers. We do this by posting a summary of this Notice in the reception area of each of our health centers, and by providing this Notice in our patient information packet. Should our privacy practices change in the future, we will notify patients by promptly posting our new policy and by making revised Notices available to all patients.

Your Rights Concerning your individual information

Right to know how your records have been disclosed - You have the right to receive a history of the disclosures of your health care records.

44.   Notwithstanding the foregoing assurances and promises, Defendants failed to protect the Personal and Medical Information of Plaintiff and other Class members from cyber criminals using relatively unsophisticated means to dupe their patients, as conceded in the Notice to the Breach Victims.

45.   If Defendants truly understood the importance of safeguarding patients' Personal and Medical Information, they would acknowledge their responsibility for the harm they caused, and would compensate class members, provide long-term protection for Plaintiff and the Class, agree to Court-ordered and enforceable changes to their cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

46.   Defendants' data security obligations were particularly important given the known substantial increase in data breaches, including the recent massive data breach involving Episource,

---

[4] Open Door Community Health Centers Privacy Practices, https://opendoorhealth.com/patient-resources/notice-of-privacy-practices/, last accessed on January 21, 2026.

Arrowhead, Cigna Healthcare, Sonrisas Dental, Palo Verde Hospital, BayMark, Dignity Health, VectraRx, Numotion, Innovative Renal Care, Omni Health, A&A Sav-RX, Fresno Surgical, Cencora, PostMeds, Tri City Medical, Kaiser Foundation Health Plan, Independent Living System, United Health Centers of the San Joaquin Valley, PracticeMax, Lincare, Illuminate Education, Horizon Actuarial Services, Partnership HealthPlan of California, Bako Diagnostics, Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no excuse for Defendants' failure to adequately protect Plaintiff's and Class members' Personal and Medical Information.

47. That information is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C. Defendants had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

48. Defendant requires its customers to provide PII for business and compliance reasons. It collects, retains, and uses that data to maximize profits through predictive marketing and other targeted marketing practices. By collecting, using, and deriving significant benefit from customers' PII, Defendant had a legal duty to take reasonable steps to protect this information from disclosure. As discussed below, Defendants also had a legal duty to take reasonable steps to protect customers' PII under applicable federal and state statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, et seq. FTC Security Guidelines Concerning PII.

49. Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

50. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

51. HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

52. HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

53. "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

54. HIPAA's Security Rule requires Defendants to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

55. HIPAA also required Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

56. HIPAA also required Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

57.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendants to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach.*"[5]

58.    The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches. Defendants were prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

59.    Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

60.    In 2016, the FTC provided updated security guidelines in a publication titled Protecting Personal Information: A Guide for Business. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay particular attention to the security of web applications – the software used to inform visitors to a company's website and to retrieve information from the visitors.

61.    The FTC recommends that businesses do not maintain payment card information beyond the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

[5] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

62. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

63. The FTC has brought several actions to enforce Section 5 of the FTC Act. According to its website:

> When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights, or misled them by failing to maintain security for sensitive consumer information, or caused substantial consumer injury. In many of these cases, the FTC has charged the defendants with violating Section 5 of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.

64. Defendant was aware or should have been aware of its obligations to protect its customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. Among other violations, Defendant violated its obligations under Section 5 of the FTC Act.

65. For example, the length of time it took Defendant to discover the Data Breach and to inform Plaintiff and the Class about the Data Breach indicates that it does not use an adequate intrusion detection system to immediately expose a data breach; does not sufficiently monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; does not properly monitor for the transmission of large amounts of data from the system; and does not maintain an appropriate plan to respond effectively to a data breach in the event one occurs.

66. As described before, Defendants are also required (by the California Consumer Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff's and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

15

67.     In addition to their obligations under federal and state laws, Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

68.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to design, maintain, and test their computer systems and email system to ensure that the Personal and Medical Information in Defendants' possession was adequately secured and protected.

69.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

70.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to implement processes that would detect a breach on their data security systems in a timely manner.

71.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to act upon data security warnings and alerts in a timely fashion.

72.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to adequately train and supervise their employees to identify and avoid any phishing emails that make it past their email filtering service.

73.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an

16

inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendants.

74.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose in a timely and accurate manner when data breaches occurred.

75.     Defendants owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.     A Data Breach like Defendants' Results in Debilitating Losses to Consumers**

76.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[6] Cyber criminals can leverage Plaintiff's and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

77.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

78.     This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff's and the Class members' Personal and Medical Information from Defendants was to

---

[6] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.     Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

17

engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims.

79. This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[7]

80. Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years.** As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

81. For instance, with a stolen social security number, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[9] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

82. Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more "than identity thefts involving banking and finance, the government and the military, or education."[10]

83. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum.

---

[7] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[8] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[9] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[10] Michael Ollove, *"The Rise of Medical Identity Theft in Healthcare,"* Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

"Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[11]

84. As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[12] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[13]

85. If, moreover, the cyber criminals also manage to steal financial information, credit and debit cards, health insurance information, driver's licenses and passports—as they did here—there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

86. A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[14] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[15]

87. As described above, identity theft victims must spend countless hours and large

---

[11] Id.

[12] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[13] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

[14] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[15] Id.; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

amounts of money repairing the impact to their credit.[16]

88. The danger of identity theft is compounded when a minor's Personal and Medical Information is compromised because minors typically have no credit reports to monitor. Thus, it can be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze" their credit report when no credit report exists.

89. Any offer of free identity monitoring to Plaintiff and the Class would likewise be insufficient. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal and Medical Information is stolen and when it is used. In any case, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Personal and Medical Information)—it does not prevent identity theft.[17] This is especially true for many kinds of medical identity theft, for which most credit monitoring plans provide little or no monitoring or protection.

90. As a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

91. Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

b. Improper disclosure of their Personal and Medical Information;

---

[16] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[17] *See, e.g.,* Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendants' untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

92. Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards.

93. Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendants do nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

**V.**

**CLASS ACTION ALLEGATIONS**

21

94. Class Representative brings this action individually and on behalf of all other persons similarly situated. The putative class that Class Representative seeks to represent is composed of:

> All citizens of the State of California who provided their personal medical information to Defendants on or before October 2, 2025, and who received notices from Defendants that their information was compromised (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendants. Class Representative expressly disclaims that she is seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

95. Plaintiff is informed and believes that the total number of Class Members exceeds 500 persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Class Representatives at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendants.

96. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative's claims are typical of the members of the class, and Class Representative can fairly and adequately represent the interests of the Class.

97. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Personal and Medical Information;

(b) Whether Defendants failed to protect Plaintiff's and the Class's Personal and Medical Information;

(c) Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and the Class's Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCPA, CPRA, UCL, and/or Defendant's other duties;

(d) Whether Defendants violated the data security statutes and data breach notification statutes applicable to Plaintiff and the Class;

(e) Whether Defendants failed to notify Plaintiff and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f) Whether Defendants acted negligently in failing to safeguard Plaintiff's and the

22

Class's Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(g) Whether Defendants entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendants to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(h) Whether Defendants violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(i) Whether Defendants failed to notify Plaintiff and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(j) Whether Defendants' conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(k) Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendants' wrongful conduct;

(l) What equitable relief is appropriate to redress Defendants' wrongful conduct; and

(m) What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

Class Representative's claims are typical of those of the other Class members because Class Representative, like every other Class member, was exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

98. Class Representative will fairly and adequately protect the interests of the Class. Moreover, Class Representative has no interest that is contrary to or in conflict with those of the Class she seeks to represent during the Class Period. In addition, Class Representative has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

99. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Class Representative knows of no difficulty that will be encountered in the management

of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

100. Proper and sufficient notice of this action may be provided to the Class members through direct mail.

101. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be damaged by the unauthorized release of their individual identifiable medical information.

## VI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)
(Against All Defendants)

102. Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. Defendant is a "provider of health care," within the meaning of Civil Code §56.05(m), a "contractor" within the meaning of Civil Code §56.05(d), a "recipient" under Civil Code §56.13, or an administrator under Civil Code §56.26, and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

104. Plaintiff and the Class are "patients" within the meaning of Civil Code § 56.05(k). Furthermore, Plaintiff and the Class, as patients of Defendants, or their contracting entity, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendants' server on or before October 2, 2025.

105. On or about October 2, 2025, Defendants determined that the illegally accessed files involved Plaintiff's and the Class members' individual identifiable "medical information," within

24

the meaning of Civil Code § 56.05(j),[18] including Plaintiff's and the Class members' "name, address, Social Security number, date of birth, medical record number (MRN)/patient account number (PAN), clinical or treatment information, , medical procedure information, medical provider name, prescription information, health insurance member ID/group number and health insurance carrier."

106. Defendants were made aware of an unusual activity involving certain of their electronic files. Defendants immediately commenced an investigation to quickly assess the security of their systems. Through the investigation, Defendant determined that certain files were accessed and acquired on or about November 25, 2024 to November 30, 2024, without authorization. During their investigation, Defendants determined that the information of certain individuals were present in the relevant files.

107. As a result of Defendants' above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

108. Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff, individually and on behalf of the Class, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

## SECOND CAUSE OF ACTION
### (Violations of the CCPA, Cal. Civ. Code § 1798.150)
### (Against All Defendants)

109. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

---

[18] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiff's and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

110. Plaintiff and the Class members hereby seek relief under § 1798.150(a), including, but not limited to, (i) recovery of actual damages or damages in an amount not less than $100 and not greater than $750 per consumer per incident, whichever is greater, (ii) injunctive or declaratory relief, and (iii) any other relief the Court deems proper, including attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

111. Plaintiff and Class members also seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguards customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold customers' PII, including Plaintiff's and Class members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

112. Defendant is a company with an estimated annual revenue of over $77 million. Defendants collected consumers' PII as defined in Cal. Civ. Code § 1798.140.

113. Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

114. Defendants collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's and Class members' personal information, including unencrypted names and birth dates, among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

115. Plaintiff has served Defendant with a notice and opportunity to cure pursuant to Cal. Civ. Code §1798.150 by certified mail upon filing of this complaint.

116. Defendant has not responded to Plaintiff's Cal. Civ. Code §1798.150 letter. Specifically, Defendant failed to (i) provide an express written statement that the violations have been cured and that no further violations shall occur as required by § 1798.150; or (ii) "actually cure" its violation of Cal. Civ. Code §1798.150(a) within thirty days of Plaintiff's written notice of

Defendants' violation of §1798.150(a). 84. Based on the foregoing, Plaintiff's claim for statutory damages under the CCPA is therefore proper.

//

//

//

### THIRD CAUSE OF ACTION
### (Violations of the CALIFORNIA PRIVACY RIGHTS ACT, Civil Code § 1798.100 *et seq.*)
(Against All Defendants)

117. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

118. The CPRA expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

119. Defendants failed to comply with these enhanced obligations, including but not limited to: (a) inadequate transparency regarding their data collection, storage, and use practices; (b) retaining personal information longer than necessary; and (c) failing to limit use and disclosure of sensitive personal data.

120. As a result of Defendants' non-compliance as outlined above, Plaintiff's and the Class's personal information were compromised.

121. Plaintiff seeks available statutory remedies, including but not limited to statutory and actual damages, injunctive relief, and attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### (NEGLIGENCE

122. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

123. Defendant required Plaintiffs and Class Members to submit non-public, sensitive PII and other data when the latter accessed Defendant's Systems.

124. Defendant had, and continues to have, a duty to Plaintiffs and Class Members to exercise reasonable care in safeguarding and protecting their PII and other data. Defendant also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the collection, storage and protection of PII and other data within their possession, custody and control.

125. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and the Class. The special relationship arose because Plaintiffs and the Members of the Class had entrusted Defendant with their PII and other data when they accessed the Systems. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiffs and the Class Members from a data breach.

126. Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the PII and other data entrusted to it, including Plaintiffs and Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs and Class Members' PII and other data.

127. Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiffs and Class Members by, inter alia, failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' PII and other data within its possession, custody, and control.

128. Defendant, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiffs and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies,

procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their PII and other data.

129. But for Defendant's negligent breach of the above-described duties owed to Plaintiffs and Class Members, their PII and other data would not have been released, disclosed, and disseminated without their authorization.

130. Plaintiffs and Class Members' PII and other data was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Defendant's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs and Class Members' PII and other data.

131. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class Members have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and noneconomic harm.

132. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this Data Breach constitute negligence.

133. Plaintiffs are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

134. Plaintiffs are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits

of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE PER SE)

135. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

136. Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiffs and Class Members.

137. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII and other data of Plaintiffs and Class Members. The pertinent FTC publications and orders form part of the basis of Defendant's duty in this regard.

138. Defendant required, gathered, and stored personal and financial information of Plaintiffs and Class Members in order to enable the latter to access the Systems.

139. Defendant violated the FTCA by failing to use reasonable measures to protect the PII and other data of Plaintiffs and Class Members and by not complying with applicable industry standards, as described herein.

140. Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

141. The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

142. As a direct and proximate result of Defendant's negligence per se, Plaintiffs and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering unemployment benefits; potentially defending

themselves from legal action base upon fraudulent applications for unemployment benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

143. Defendant's violation of the FTCA constitutes negligence per se.

144. For the same reasons and upon the same bases, Defendant's violation of the CCPA, CPRA, UCL, and various other State and local statutes, constitutes negligence per se.

145. As a direct and proximate result of Defendant's violation of the foregoing statutes and regulations, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendants:

a. An order certifying this action as a class action under Code of Civil Procedure §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CMIA, CCPA, CPRA, and UCL, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

    i. Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a

31

periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii. Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii. Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

iv. Ordering that Defendants' segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

vi. Ordering that Defendants conduct regular database scanning and securing checks;

vii. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

viii. Ordering Defendants to meaningfully educate their current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.;

d. An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the CPRA, CCPA, Cal. Civ. Code § 1798.150 and CMIA, Cal. Civ. Code 56.35; and

f. An award of such other and further relief as this Court may deem just and proper.

Dated: February 1, 2026

POTTER HANDY LLP

By:_____
Mark D. Potter
James M. Treglio
Isabel Rose Masanque

## DEMAND FOR JURY TRIAL

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: February 1, 2026

POTTER HANDY LLP

By:_____
Mark D. Potter
James M. Treglio
Isabel Rose Masanque

Class Action Complaint