**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE:** Cognizant Technology Solutions Corporation and TriZetto Provider Solutions, LLC Data Security Breach Litigation | § § § | MDL No. 3185 |

**TRIZETTO PROVIDER SOLUTIONS, LLC & COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF-MOVANTS' MOTION FOR TRANSFER**

Defendants TriZetto Provider Solutions, LLC ("**TPS**") and Cognizant Technology Solutions Corporation ("**Cognizant**") hereby submit this Response in Opposition to Plaintiff-Movants' Motion for Transfer and Centralization of Related Actions to the District of New Jersey Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings, ECF 1 (the "**Motion**"); *see also* ECF 1-1 (the "**Memorandum**"), and respectfully show as follows:

**<u>INTRODUCTION</u>**

In a handful of paragraphs, focused on trying to show non-existent common fact questions and sprinkled with bald assertions regarding efficiency, Plaintiff-Movants ask the Panel for the last-resort solution of centralization under 28 U.S.C. § 1407. The rest of the Motion then tries to convince the Court that the centralized matter should be transferred to their preferred later-filed forum of New Jersey, rather than the first-filed and more convenient forum of the Eastern District of Missouri. There is no basis for any of the relief the Motion requests.

Try as they might, Plaintiff-Movants cannot meet their threshold burden to show a common question of fact supporting transfer and centralization under § 1407, much less one that will not be overwhelmed by case-specific facts. Each Related Action involves patients or policyholders of different healthcare organizations, implicating different contractual and regulatory relationships, with different alleged individual damages. And TPS is the only

-1-

defendant named in all of the Related Actions. Plaintiff-Movants' inability to identify any common fact question, much less a significant one, alone warrants denial of the Motion.

Nor do Plaintiff-Movants even try to explain what about § 1407 centralization and transfer would be more convenient, efficient, or just for the parties and witnesses than, for example, a 28 U.S.C. § 1404 transfer and consolidation of the limited number of actions remaining related to the data incident at issue (the "**Related Actions**"). That is especially true where: (1) the few (effectively four), geographically-concentrated pending actions are already amenable to § 1404 transfer and subsequent consolidation in the Eastern District of Missouri, where other Related Actions are already consolidated into the first-filed case; and (2) efforts at § 1404 transfer are well underway and almost entirely unopposed. Compare that to Plaintiff-Movants' requested § 1407 relief here, which *every* appearing defendant, and many plaintiffs, *oppose*. This near-unanimous opposition strongly undercuts any showing of convenience, efficiency, or justness as required for § 1407 relief.

Aside from those fatally deficient infirmities, and alternatively, any centralization and transfer should occur in the Eastern District of Missouri—not the District of New Jersey—for at least three reasons. *First*, the Eastern District of Missouri is home to the first-filed and procedurally advanced of the Related Actions. Indeed, other Related Actions have already been consolidated into it, and multiple parties elsewhere have agreed to a § 1404 transfer there. *Second*, the principal place of business for TPS—the primary defendant in the Related Actions—is in Earth City, Missouri. Meanwhile, aside from the suspect naming of TPS's apex parent company as a defendant, Plaintiffs-Movants have not identified a single relevant document, witness, plaintiff, or healthcare-organization defendant located in New Jersey. *Third*, the Eastern District of Missouri's docket is considerably less burdened than that of the District of New

Jersey. Any of these reasons warrant designation of the Eastern District of Missouri as the proper transferee court if centralization occurs.

Ultimately, because there is no basis for § 1407 centralization, the Panel should deny the Motion in its entirety. Alternatively, the Panel should transfer the Related Actions to the Eastern District of Missouri for centralization there.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**A.      TPS, Cognizant, the Alleged Incident, and the Related Actions**

TPS is a healthcare technology company incorporated in Delaware, with its principal place of business in Earth City, Missouri. Donohue Decl. ¶¶ 3, 5; Mot. 5. TPS provides software services to healthcare organizations and has no direct relationship with patients. *Id.* ¶¶ 3, 4. TPS instead has direct contractual relationships with some healthcare organizations, while others obtain access to its services through intermediaries. *Id.* ¶ 4. The categories of data elements stored on TPS's system vary depending on how the relevant healthcare organization utilizes TPS services. *Id.* ¶ 3.

The complaints in the Related Actions generally allege that, on or about October 2, 2025, TPS identified suspicious activity in a web portal that some healthcare organizations use to access TPS's services, resulting in the compromise of sensitive patient information (the "**Incident**"). Each complaint asserts various claims relating to the Incident, with negligence the only cause of action common across all complaints. All but one of the Related Actions seeks to certify a nationwide class of persons affected by the Incident.[1] Some complaints name only TPS; others also name the specific healthcare organizations that allegedly collected the plaintiffs'

---

[1] The *Hahn* action, pending in the Northern District of California, seeks only a statewide class. *See* ECF 1-8, *Hahn v. Open Door Community Health Centers et al.*, Case No. 3:26-cv-2267, N.D. California.

information; and some name TPS's apex parent Cognizant Technology Solutions Corporation.[2]

That naming of Cognizant is the only purported basis for any of the Related Actions being filed in New Jersey. Mot.5. Cognizant (TPS's apex parent, and multiple, separate corporate layers removed from TPS) is a publicly-traded Delaware corporation with its principal place of business in New Jersey. Donohue Decl. ¶ 5. TPS, meanwhile, has no significant or relevant connection to New Jersey: neither its principal place of business, its IT infrastructure, or those persons knowledgeable about that infrastructure are there. *Id.* ¶ 7. Almost half its employees are in Missouri, and the remainder are dispersed across various states all around the country. *Id.*

Importantly, no plaintiff in any of the Related Actions has alleged (nor could they) undercapitalization, fraud, or any other basis for disregarding the corporate separateness of TPS and Cognizant. Instead, most of the complaints that name Cognizant as a defendant allege no basis for doing so beyond its status as TPS's apex parent. A few make conclusory "information and belief" allegations that TPS and Cognizant share a management structure and key decisionmakers.[3] But TPS is a separately incorporated entity with its own officers, books and records, financial accounts, and contractual relationships. Donohue Decl. ¶ 6. Cognizant, conversely, functions as a holding company with no day-to-day operations relevant to the software services TPS provides. *Id.*

---

[2] TriZetto's parent company is Cognizant TriZetto Software Group, Inc., whose parent company is Cognizant Domestic Holdings Corporation, whose parent company is the Cognizant Technology Solutions Corporation that is named as a party to some of the lawsuits. Donohue Decl. ¶ 5.

[3] *See* Compl. ¶¶ 50-53, ECF 1-11, *Lytle et al. v. TriZetto Provider Solutions, LLC, et al.*, Case No. 2:25-cv-18938, D.N.J. ("information and belief"); Compl. at 1 & ¶¶ 18-19, ECF 1-15, *Patterson v. Cognizant Tech. Solutions Corp. et al.*, Case No. 2:26-cv-02570, D.N.J. ("upon information and belief as to all other matters" other than plaintiff's actions and experiences).

### B.      Ongoing Coordination Efforts for the Related Actions

As of the date of this Response, Related Actions are pending in four federal districts: the Eastern District of Missouri (where the first case was filed), the District of New Jersey, the Eastern District of California, and the Northern District of California. All actions in the Eastern District of Missouri have been consolidated into the first-filed *Niessing* action. *See* Order Consolidating Cases, *Niessing v. Trizetto Provider Solutions, LLC et al.*, Case No. 4:25-cv-01861, E.D. Mo., Dkt. No. 8 (Fagelman Decl. Ex. A).

On February 2, 2026, counsel for TPS and Cognizant met and conferred with counsel for Plaintiff-Movants, who are plaintiffs in *Burge et al. v. Cognizant Technology Solutions Corp. et al.*, No. 2:25-cv-18908, D.N.J. ("*Burge*"). They conveyed TPS and Cognizant's view that the later-filed New Jersey actions ought to be transferred to the Eastern District of Missouri for consolidation with the first-filed action there. Fagelman Decl. ¶ 6.

A few days later, on February 6, counsel for Plaintiff-Movants submitted a letter to the District Court of the District of New Jersey requesting consolidation. *See* Letter Requesting Consolidation, *Burge* Dkt. No. 6 (Fagelman Decl. Ex. C). The letter stated that TPS and Cognizant did not oppose preliminary consolidation of the cases pending in the District of New Jersey into a single case in the District of New Jersey, but expressly "reserve[d] their rights" to "seek transfer of any to-be-consolidated action in the District of New Jersey at a future date to a more appropriate venue, namely, the Eastern District of Missouri, where jurisdiction and venue exist, and where the first-filed action . . . is pending." *Id.* at 2.

The New Jersey District Court subsequently entered an order consolidating the New Jersey actions into the *Burge* action on March 10. *See Burge* Dkt. No. 8 (Fagelman Decl. Ex. D). Notably, of the three defendants (other than TPS and Cognizant) that have been named in the New Jersey actions, none of them is located in New Jersey.

On March 12, counsel for TPS and Cognizant again contacted counsel for Plaintiff-Movants, reiterating their position that the New Jersey actions should be transferred to the Eastern District of Missouri and again asked Plaintiff-Movants for their position on transfer and consolidation there. Fagelman Decl. ¶ 9 & Ex. E. Rather than respond, on March 17, Plaintiff-Movants filed the Motion, seeking transfer and centralization of the Related Actions under § 1407 and simultaneously asking that the Related Actions be transferred not to the Eastern District of Missouri, but instead to the District of New Jersey. ECF 1.

On April 8, pursuant to local rule, TPS and Cognizant filed a pre-motion letter in the consolidated New Jersey action seeking leave to file a motion to transfer venue to the Eastern District of Missouri under § 1404. *See Burge* Dkt. No. 14 (Fagelman Decl. Ex. F). Also on April 8, in the *Taylor* action pending in the Eastern District of California, TPS filed a motion to transfer venue to the Eastern District of Missouri under § 1404. *See* Motion to Transfer, *Taylor v. TriZetto Provider Solutions, LLC, et al.*, No. 2:26-cv-00086, E.D. Cal., Dkt. No. 16 (Fagelman Decl. Ex. G). TPS anticipates filing a similar motion in the near future in the *Hahn* action pending in the Northern District of California. Fagelman Decl. ¶ 11(b).

## LEGAL STANDARD

This Panel has made clear that there is no automatic right to transfer under § 1407. *In re New York City Municipal Sec. Litig.*, 439 F. Supp. 267, 270 (J.P.M.L. 1977). Instead, the burden falls on the movant seeking § 1407 centralization to show three requirements: (1) the actions involve common questions of fact; (2) transfer will serve the convenience of the parties and witnesses; and (3) transfer will promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a); *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011) ("proponents of centralization have not met their burden of demonstrating the need for centralization").

In considering these factors, the Panel "weighs the interests of **all** parties" and "the purposes of Section 1407," namely, "eliminat[ing] duplicative discovery, prevent[ing] inconsistent pretrial rulings, and conserv[ing] the resources of the parties, their counsel, and the judiciary." *In re New York City Municipal Sec. Litig.*, 439 F. Supp. 267, 270 (J.P.M.L. 1977) (emphasis added); *In re NuvaRing Products Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008). Because alternatives can often be more effective in advancing these purposes, § 1407 transfer and centralization "***should be the last solution after considered review of all other options***." *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (emphasis added).

If the Panel ultimately decides that centralization is appropriate, it must then choose the transferee court based on a weighing of multiple factors, including the place of the first-filed action, the number of actions and their procedural advancement, the locations of parties and witnesses, geographic accessibility, and docket conditions. *See, e.g.*, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1414 (J.P.M.L. 2021) (transferring to district in which first-filed case pending); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) (transferring to district with 13 of 40 pending actions); *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*, 600 F. Supp. 3d 1343, 1344 (J.P.M.L. 2022) (transferring to district in which defendant headquartered, where "common witnesses and other evidence likely will be located"); *NuvaRing*, 572 F. Supp. 2d at 1383 (transferring to "readily accessible district with the capacity to handle this litigation and a relatively low number of pending MDL dockets").

Under these well-established legal standards, centralization under § 1407 is not appropriate here, and certainly not in the District of New Jersey.

## ARGUMENT

### I.   Plaintiff-Movants failed to meet their burden to obtain centralization under § 1407.

Plaintiffs-Movants cannot meet their burden to show even one of the requirements for § 1407 centralization, much less all three. The Motion centers almost entirely on so-called "common questions of law and fact," Memo.3, and yet Plaintiffs-Movants have not and cannot identify a *fact* question common across all the Related Actions, let alone one that can withstand the numerous case-specific factual issues that will arise. Plaintiff-Movants' bald assertion that § 1407 is "the most efficient and effective way to handle these cases" (Memo.5) likewise cannot satisfy their burden to show convenience to the parties and witnesses. Nor does it show justness, especially when parties—on both sides of the aisle—*oppose* centralization. Plaintiff-Movants also ignore a much more efficient, cost-effective alternative—§ 1404 transfer and consolidation—with efforts to achieve that alternative well underway. Any of these reasons, standing alone or together, warrant denial of the Motion.

### A.   Plaintiffs-Movants cannot identify any common fact questions supporting centralization.

The Motion fails at the threshold because Plaintiffs-Movants cannot identify any "common questions of fact"—rather than law—across the Related Actions. *See* 28 U.S.C. § 1407; *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009); *In re Oklahoma Ins. Holding Co. Act Litig.*, 464 F. Supp. 961, 965 (J.P.M.L. 1979) (holding "a mixed question of fact and of law" where "the legal aspects of these questions clearly predominate" is "an inadequate predicate" for centralization).

The Motion lists the following four purported "common questions of law and fact," Memo.3, two of which are purely or predominantly legal and two of which are not common:

- "Whether Defendants' data security systems prior to the data breach met the requirements of the applicable laws," Memo.3, is principally a legal

question, requiring identification and application of applicable statutory and regulatory requirements—which will vary by jurisdiction (*see* Memo.4-5 (identifying "state data privacy laws"))—and whether plaintiffs have standing to enforce them.

- "Whether Defendants' data security systems prior to the data breach met industry standards," Memo.3, is likewise a principally legal question requiring identification and interpretation of relevant legal and industry standards, which again varies by jurisdiction and by the specific regulatory framework applicable to each healthcare-organization customer.

- "Whether Plaintiffs' and other Class members' private personally identifiable information and/or protected health information was compromised as a result of the data breach," Memo.3, is not common across the Related Actions because what data, if any, of each individual plaintiff was potentially accessible during the Incident depends on which healthcare organization had that plaintiff's data and how that organization was utilizing TPS's services.

- Finally, "[t]he appropriate measure of damages sustained by Plaintiffs and Class members," Memo.3, is not a common question because it depends on what information, if any, was compromised as to each individual, which, again, varies depending on the relevant healthcare organization.

Plaintiff-Movants' inability to identify any common fact question alone warrants denial of the Motion.

But even if Plaintiffs-Movants could identify one, the Panel should still deny centralization, as it has done before, because any such common questions either "do not appear sufficiently complex or numerous," *In re Honey Prod. Mktg. & Sales Pracs. Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012), or "[i]ndividualized discovery and legal issues are likely to be numerous and substantial," *In re Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012). Indeed, in remarkably similar circumstances, this Panel denied centralization for allegations that a data breach compromised personal information provided to organizations using the primary defendant's services. *In re Accellion, Inc., Customer Data Security Breach Litigation*, 543 F. Supp. 3d 1372, 1373 (J.P.M.L. 2021). The Panel reasoned that "[a]ny factual overlap among the actions" as to the role of the primary defendant

"may be eclipsed by factual issues specific to each client defendant." *Id.*

*The same holds true here*. Case-specific factual issues abound, including: which healthcare providers or payers utilized which TPS services; what patient or policyholder data each healthcare organization allegedly had in those systems, if any; whether any such data was affected by the Incident; and what the nature of each healthcare organization's relationship is/was with TPS (e.g., direct or indirect, and governed by what contracts or regulations, for example). These case-specific issues would overwhelm any common factual core that might exist.

Because Plaintiff-Movants failed to identify any common fact question, much less a complex one that would not be overshadowed by case-specific questions, the Motion should be denied for this reason alone.

**B.    Plaintiff-Movants' bald assertions cannot satisfy their burden to show § 1407 centralization will be convenient, just, or efficient.**

The Motion independently fails because, beyond reciting legal standards and some bald assertions, Plaintiff-Movants provide no explanation as to why centralization would actually serve the "convenience of the parties and witnesses and will promote the just and efficient conduct of this litigation." 28 U.S.C. § 1407. The Motion simply parrots generic considerations for centralization, Mot.5, while the Memorandum contains a single, conclusory statement that "multidistrict litigation is the most efficient and effective way to handle these cases," Memo.5.

This dearth of explanation regarding convenience, efficiency, and justness is exacerbated by the fact that all appearing defendants and many plaintiffs *oppose* centralization here. Such unanimous or nearly unanimous opposition militates strongly against transfer. *In re New York Tax Foreclosure Surplus Litig.*, 743 F. Supp. 3d 1378, 1378 (J.P.M.L. 2024) (declining to centralize where all defendants either opposed centralization or opposed the inclusion of the

actions against them in any MDL); *In re Kronos Customer Data Security Breach Litig.*, 619 F. Supp. 3d 1354, 1354 (J.P.M.L. 2022) (declining to centralize where both defendants and most plaintiffs opposed centralization). And TPS's opposition is particularly "persuasive" because TPS, the primary defendant and only party named in all of the Related Actions, is the party "who would be most affected by centralization." *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023).

None of Plaintiff-Movants' easily distinguishable cases mandate a different result. They cite just one case where the Panel granted centralization over the primary defendant's objection—*In re T-Mobile 2022 Customer Data Security Breach Litigation*, 677 F. Supp. 3d 1366 (J.P.M.L. 2023). But the *T-Mobile* actions involved only two related defendants (T-Mobile US, Inc., and T-Mobile USA, Inc.) and implicated none of the complex factual issues that rendered centralization inefficient in *Accellion* and that warrant the same denial of centralization here. *Id.* at 1366. Further, the *T-Mobile* plaintiffs unanimously ***supported*** centralization, while, unlike here, the *T-Mobile* defendants conceded centralization was warranted if their motions to compel arbitration were denied. *Id.* at 1367. No unanimous support nor concession exists here.

Plaintiff-Movants' remaining cases did not involve ***any opposition*** from the primary defendant. *Cf.* Memo.4. Indeed, in three of those cases, all parties ***agreed*** centralization was warranted, evidencing their belief that § 1407 transfer and centralization served the convenience of the parties. *See In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1374 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1368 (J.P.M.L. 2023); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020). The remaining two cases involved some opposition to centralization, but no clear consensus against it on either side of the plaintiff-defendant divide. More importantly,

-11-

the primary defendants *supported* centralization. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1402 (J.P.M.L. 2023) (101 actions across 22 districts, with strong support for centralization among both plaintiffs and defendants, including the primary defendant); *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1371 (J.P.M.L. 2021) (most plaintiffs and all defendants supported centralization).

Here, no defendant, and certainly not the primary one (TPS), supports centralization. Neither do many of the plaintiffs. Plaintiff-Movants' lack of explanation on convenience, efficiency, or justness, coupled with the strong opposition to centralization, independently warrants denial of the Motion.

### C. The availability of, and efforts toward, a more efficient, and convenient Section 1404 transfer independently warrant denial of the Motion.

Section 1407 centralization "should be the *last solution* after considered review of all other options." *Gerber*, 899 F. Supp. 2d at 1379 (emphasis added). Here, just as in *Accellion*, § 1407 centralization is "unnecessary," because other, superior means of coordination or consolidation exist—including under § 1404—and efforts towards such consolidation are already underway. *Accellion*, 543 F. Supp. 3d at 1373. This is yet another basis to deny the Motion.

#### 1. Section 1404 transfer and consolidation is more efficient than centralization in an MDL.

"[W]here there is a reasonable prospect that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions," the Panel routinely "denie[s] centralization." *Gerber*, 899 F. Supp. 2d at 1379. Indeed, even when there is some question whether complete consolidation could be achieved through § 1404 transfer motions, the Panel prefers to wait for the relevant districts courts to rule on such motions because such rulings "can aid the Panel in its decision whether and where to centralize a given litigation." *Id.*

That is because transfer and consolidation under § 1404 is superior to transfer and

centralization under § 1407 for multiple reasons, including because the latter "is not permanent," but rather "limited to pretrial proceedings only." *Gerber*, 899 F. Supp. 2d at 1379 (citing *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34, 118 (1998)). Inefficiencies almost always follow when the transferee court must consider motions to remand and the transferor court must re-familiarize itself with the dispute post-remand. Meanwhile, centralized "pretrial proceedings" in the data-breach context can be both time-consuming and arduous, undercutting the very efficiency § 1407 is meant to facilitate.

The *MOVEit* action illustrates this point. In that case, involving over 100 actions across 22 districts and not all naming the primary defendant, the Panel entered a transfer order in October 2023. 699 F. Supp. 3d at 1403. Following extensive motion practice regarding the MDL structure, the transferee court finally created a bellwether structure *nine months later*, in July 2024. *See* MDL Order No. 17, *In re MOVEit Customer Data Sec. Breach Litig.*, Case No. 1:23-md-03083, D. Mass ("*MOVEit*"), Dkt. No. 1123. Rule 12(b)(1) motions to dismiss were not decided until *14 months after centralization* (December 2024), and Rule 12(b)(6) motions were not decided until *21 months after centralization* (July 2025). MDL Order Nos. 19, 22 & 23, *MOVEit* Dkt. Nos. 1304, 1516 & 1517.

Throughout this period, now approaching two and a half years, the non-bellwether defendants (the vast majority of the centralized docket) have remained largely on the sidelines, and it remains unclear when (if ever) the existing structure will allow for litigation of the non-bellwether claims. There has also been only limited non-bellwether settlement activity, in large part because, even where a single data incident provides *some* common factual background, many of the key defenses in data-breach litigation turn on issues specific to the named plaintiffs and defendants in each action.

*MOVEit* perfectly demonstrates why the MDL structure is ill-suited to efficiently resolve the issues presented in data-breach litigation.

Meanwhile, § 1404 transfer and subsequent consolidation is not only permanent, but in the data-breach litigation context, substantially more efficient. The availability of such an alternative has spurred the Panel to deny centralization of related data breach actions before, and it should do so again here. *E.g.*, *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372 (J.P.M.L. 2018) (centralization unnecessary for actions pending across three districts when § 1404 transfer could bring them all to one district); *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, 648 F. Supp. 3d 1377 (J.P.M.L. 2022) (similar).

### 2. Consolidation and transfer efforts in the Related Actions are well underway and likely to succeed.

A demonstrated record of consolidation efforts already underway is powerful evidence that an MDL would add no marginal value. *See, e.g.*, *Accellion*, 543 F. Supp. 3d at 1373 (finding "no reason to disrupt the parties' efforts"). Party representations that they will cooperate to ensure efficiency are also probative. *In re Blue Spike, LLC, Patent Litig.*, 278 F. Supp. 3d 1379, 1381 (J.P.M.L. 2017) (representation of parties "that they would work together" to "ensure the efficient conduct" of litigation counsels against forming an MDL); *In re Xytex Corp. Sperm Donor Products Liab. Litig.*, 223 F. Supp. 3d 1351, 1353 (J.P.M.L. 2016) (similar).

Here, consolidation is not merely aspirational—it is already happening. Consolidation orders have been entered in the Eastern District of Missouri and the District of New Jersey, venue transfer motions have been or will soon be filed in the two outlier California actions, and a pre-motion letter seeking leave to file a venue transfer motion has been filed in the New Jersey consolidated action. These motions to transfer (even if opposed) should be granted under the well-established first-filed rule, bringing all of the Related Actions into a single district—the

-14-

Eastern District of Missouri, Eastern Division—where the first-filed, now consolidated *Niessing* action is pending.[4]

Both the first-filed *Niessing* action and the related actions pending elsewhere seek to certify nationwide putative classes for claims against TPS and present at least one common question of law. *See supra* at 3-4. The related actions therefore should be transferred to the Eastern District of Missouri for consolidation with the *Niessing* action, where venue exists for the reasons discussed below. *See infra* at 17-18; *see, e.g.*, *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 364 (D.N.J. 2010) (later-filed putative class actions seeking to represent the same set of proposed plaintiffs against a common defendant should be transferred to the location of the first-filed action); *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (same). Even if the Panel has doubts about the success of the anticipated § 1404 transfer motion, there is, at minimum, a "reasonable prospect" of success, further militating against centralization. *Gerber*, 899 F. Supp. 2d at 1379.

Noting the parties' efforts towards such consolidation, the *Accellion* Panel denied centralization for data-breach actions pending in five districts, with a significant number of actions spread across three districts. 543 F. Supp. 3d at 1373. The same considerations fueling that denial are even stronger here, where only four districts are involved, and consolidation orders have already been entered in the only two districts with a significant number of actions.

Because a § 1404 transfer is available, more efficient, and efforts to obtain it are well underway, the Motion should be denied on this independent basis.

---

[4] Although new plaintiffs have continued to file additional cases in the Eastern District of Missouri and the District of New Jersey since those courts entered their respective consolidation orders, those cases will be automatically consolidated into the existing actions, and so do not add any complexity to the transfer and consolidation process under § 1404.

II.     **Alternatively, the Eastern District of Missouri is the appropriate transferee court if centralization occurs.**

Alternatively, even if Plaintiff-Movants could meet their burden to demonstrate centralization is proper and the superior means to adjudicate the Related Cases (and they cannot), the Eastern District of Missouri is the most appropriate transferee court, not the District of New Jersey. In a desperate attempt to show otherwise, Plaintiff-Movants improperly conflate two separate corporate entities, while pointing to the recent, strategic proliferation of case filings in hopes of establishing a stronger link to New Jersey. Neither tactic works.

The Eastern District of Missouri is the most appropriate transferee court for multiple reasons, including (1) it is the location of the first-filed action and a large and increasing number of the Related Actions; (2) it is the most convenient location for the parties and witnesses; and (3) centralization in the Eastern District of Missouri is likely to be materially more efficient and cost-effective than in the District of New Jersey.

A.     **Missouri is the home of first-filed and procedurally advanced actions.**

A concentration of cases, as well as the first-filed one, play a key role in determining the appropriate transferee court. *See, e.g.*, *Johnson & Johnson*, 568 F. Supp. 3d at 1414 (considering location of first-filed case); *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 939 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (same); *Pradaxa*, 883 F. Supp. 2d at 1356 (transferring to district with approximately one third of pending actions). Both factors favor the Eastern District of Missouri here.

The very first of the pending Related Actions—*Niessing*—was filed in that District, which now also serves as the forum for at least 7 other Related Actions. All of those actions are in a relatively advanced procedural posture given that Court's prior order consolidating the Actions under Rule of Civil Procedure 42. And the case consolidations in Missouri should only

continue because TPS has or will soon have filed motions to transfer the California-based actions to Missouri, where those actions will be added to the already-consolidated action.

Meanwhile, New Jersey's recent uptick in the number of Related Actions is nothing more than naked gamesmanship in hopes of creating stronger ties to New Jersey. Indeed, of the sixteen actions pending in New Jersey as of the date of this response, ten were filed *after* TPS's counsel informed Plaintiff-Movants of their belief that § 1404 transfer was appropriate (February 2), with four of those filed *after* Plaintiff-Movants' Motion (on March 17). Those late, strategically-filed actions do not move the needle towards a New Jersey forum, as this Panel "find[s] less favor with" a motion that "appears intended to further the interests of particular counsel more than those of the statute." *In re CVS Caremark Corp. Wage & Hour Emp't Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010); *see also, e.g.*, *In re New York Area Emp. Ret. Income Sec. Act & Emp't Pracs. Litig.*, 2021 WL 3520621, at *1 (J.P.M.L. 2021) (similar).

Because the Eastern District of Missouri is home to the first-filed action, and a significant number of Related Actions are pending there, any § 1407 transfer should designate it as the transferee court.

**B.      The Eastern District of Missouri is the most convenient forum.**

In looking at convenience for parties and witnesses, the Panel routinely transfers litigation to the district in which the primary defendant is headquartered, since "common witnesses and other evidence likely will be located in or near this district." *Procter & Gamble*, 600 F. Supp. 3d at 1344. Here, that means the Eastern District of Missouri, which is the principal place of business of TPS, the primary defendant, the only defendant named in all of the Related Actions, and the provider of the software services allegedly impacted by the Incident. *See supra* at 3-4.

The locations of the other parties to the Related Actions also favor Missouri. The

plaintiffs are dispersed nationwide, and the various defendant healthcare organizations named in some of the Related Actions are as well. Notably, ***not a single plaintiff or defendant healthcare organization is located in New Jersey***. A centrally located transferee court therefore serves the convenience of the parties more than a coastal one. *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012) (finding the Northern District of Illinois a "a relatively central and convenient forum for the involved parties and counsel" compared to the Western District of Washington or the Middle District of Florida); *T-Mobile*, 677 F. Supp. 3d at 1367 (Missouri "provides a central and easily accessible location for this nationwide litigation"); *In re Teflon Products Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (given "geographic dispersal of the pending actions," transferring to "a geographically central location"). The Eastern District of Missouri is just such a centrally located court, in the travel hub of St. Louis—an "easy venue for all parties to reach[,]" Mot.5. That is especially true given: (1) the likely consolidation of the California actions into that forum; and (2) the consent of multiple parties who have appeared in the Related Actions to venue in the Eastern District of Missouri, which indicates their own view of the convenience of that forum.

Plaintiffs-Movants point to nothing about New Jersey, other than the presence there of TPS's apex parent (Cognizant), and the recent, strategic proliferation of filings, that make New Jersey purportedly more convenient to *all* parties and witnesses in the Related Actions. ***However, Plaintiffs-Movants have not identified a single witness, document, defendant health-care organization, or even plaintiff located there.*** The suspect naming of Cognizant (a multiple, separate corporate layers removed apex parent holding company) as a defendant in some of the Related Actions is also of no moment. It is not the primary defendant; TPS is. Plaintiff-Movants' statements otherwise, based solely on the fact that Cognizant "wholly owns" TPS and their

conclusory, bald assertion that "the two Defendants operate as a single entity under one corporate structure," Memo.5-6, are plainly insufficient under well-established veil-piercing law[5] and cannot support centralization in New Jersey.

In sum, Plaintiff-Movants fell far short of their burden to show that New Jersey is a more appropriate transferee court than the Eastern District of Missouri. The Motion's conclusory assertions offer no basis to believe that the key documents and witnesses are located in New Jersey rather than where the Panel presumes them to be located—Missouri, TPS's principal place of business. *E.g.*, *Procter & Gamble*, 600 F. Supp. 3d at 1344. Because the Eastern District of Missouri is the most convenient location for *all* parties and witnesses, § 1407 transfer should occur there, if at all.

### C.    Missouri is likely to be materially more efficient than New Jersey.

Finally, centralized litigation in the Eastern District of Missouri is likely to be materially more efficient than in the District of New Jersey. The Panel prefers transferee courts that do "not have any other multidistrict litigation dockets," and also takes into account "general docket conditions." *Teflon*, 416 F. Supp. 2d at 1365; *see, e.g.*, *NuvaRing*, 572 F. Supp. 2d at 1383 (emphasizing transferee court's "capacity to handle this litigation" and "relatively low number of pending MDL dockets"); *In re Veeco Instrs. Inc. Sec. Litig.*, 387 F. Supp. 2d 1365 (J.P.M.L.

---

[5] Claims against a corporate parent based on the conduct of the corporate subsidiary are improper absent non-conclusory allegations providing some basis to pierce the corporate veil, specifically that "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," _and_ that "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law[.]" *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988). Absent veil-piercing, a parent-subsidiary relationship cannot establish personal jurisdiction over an out-of-state entity. *See, e.g.*, *Craig*, 843 F.2d at 149; *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008). No complaint in a Related Action contains any well-pleaded allegations that would even support Cognizant as a proper defendant or personal jurisdiction over TriZetto in New Jersey, undermining not only the propriety of suit in New Jersey but centralization there.

2005) (transferring to court with "more favorable caseload statistics"). Both factors weigh heavily in favor of The Eastern District of Missouri over the District of New Jersey.

According to the most recent JPML MDL Statistics Report, there are presently no MDLs pending in the Eastern District of Missouri, while the District of New Jersey has *twelve* (12) pending MDLs.[6] The most recent U.S. Courts' Judicial Caseload Profiles further counsel in favor of Missouri, where the civil-case dockets are considerably less congested than in New Jersey. According to those Profiles, the Eastern District of Missouri's average time to disposition is 6.3 months, the average time to trial is 35.3 months, and only 3.7% of civil cases are over 3 years old. Conversely, the District of New Jersey's average time to disposition is 7.5 months, the average time to trial is 56.9 months, and 56.5% of civil cases are over 3 years old.[7]

For all these reasons, if the Panel determines that centralization is appropriate (which TPS and Cognizant deny), it should centralize in the Eastern District of Missouri.

## CONCLUSION

TPS and Cognizant respectfully request that the Panel deny the Motion. In the alternative, TPS and Cognizant respectfully request that the Panel designate the Eastern District of Missouri—not the District of New Jersey—as the transferee court.

---

[6] *See* JPML, MDL Statistics Report (Apr. 1, 2026), <https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2026.pdf>.

[7] *See* Fed. Ct. Mgmt. Stats., U.S. District Court — Judicial Caseload Profile (Dec. 31, 2025), <https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf>.

Dated:  April 8, 2026

Sincerely,

/s/ Jason K. Fagelman

Jason K. Fagelman
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
jason.fagelman@nortonrosefulbright.com

*Counsel for TriZetto Provider Solutions, LLC and Cognizant Technology Solutions Corporation*