# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:26-cv-00523-HEA

| | |
|---|---|
| Dejesus v. TriZetto Provider Solutions, LLC et al | Date Filed: 04/08/2026 |
| Assigned to: District Judge Henry Edward Autrey | Jury Demand: Plaintiff |
| Demand: $5,000,000,000 | Nature of Suit: 360 P.I.: Other |
| Cause: 28:1332 Diversity-(Citizenship) | Jurisdiction: Diversity |

**Plaintiff**

**Arleene Dejesus**
*individually and on behalf of all others similarly situated*

represented by **Amber Love Schubert**
SCHUBERT AND JONCKHEER LLP
2001 Union Street
Suite 200
San Francisco, CA 94123
415-788-4220
Fax: 415-788-0161
Email: aschubert@sjk.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TriZetto Provider Solutions, LLC**

**Defendant**

**Cognizant Technology Solutions Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2026 | 1 | COMPLAINT *Class Action Complaint Jury Trial Demanded* against defendant Cognizant Technology Solutions Corporation, TriZetto Provider Solutions, LLC with receipt number AMOEDC-11813457, in the amount of $405 Jury Demand,, filed by Arleene Dejesus. (Attachments: # 1 Civil Cover Sheet)(Schubert, Amber) (Additional attachment(s) added on 4/10/2026: # 2 Original Filing Form # 3 Summons, # 4 Summons) (ERR). Modified on 4/10/2026 (ERR). (Entered: 04/08/2026) |
| 04/08/2026 | 2 | NOTICE OF PROCESS SERVER by Plaintiff Arleene Dejesus Process Server: ABC Legal (Schubert, Amber) (Entered: 04/08/2026) |
| 04/08/2026 | 3 | DISCLOSURE STATEMENT by Arleene Dejesus. No corporate parents or affiliates identified. (Schubert, Amber) (Entered: 04/08/2026) |
| 04/10/2026 | | Case Opening Notification. Judge Assigned: Honorable Henry Edward Autrey. 2 Summons(es) issued and emailed to Attorney Amber Love Schubert. Pursuant to Local Rule 2.09, every nongovernmental corporate party or nongovernmental corporation that seeks to intervene in any case, and every party or intervenor in an action in which jurisdiction is based upon diversity, must file a Disclosure Statement immediately upon entering its appearance in the case. Please complete and file the certificate as soon as possible. (moed-0001.pdf). (ERR) (Entered: 04/10/2026) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

Case MDL No. 3185     Document 65-3     Filed 04/17/26     Page 2 of 145

04/15/2026 17:51:17

| PACER Login: | CCMS0034 | Client Code: | Cognizant |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 4:26-cv-00523-HEA |
| Billable Pages: | 1 | Cost: | 0.10 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ARLEENE DEJESUS, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br><br> v. <br><br><br> TRIZETTO PROVIDER SOLUTIONS, LLC, and COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, <br><br> *Defendants.* | **Case No.** 4:26-cv-00523 <br><br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Arleene Dejesus ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendants TriZetto Provider Solutions, LLC ("TriZetto") and Cognizant Technology Solutions Corporation ("Cognizant") (collectively "Defendants") as an individual and on behalf of all others similarly situated, seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of her counsel, and personal knowledge or facts that are a matter of public record.

## INTRODUCTION

1.      The release, disclosure, and publication of sensitive, private data can be devastating. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for

victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.      Defendant Cognizant is an information technology consulting corporation. As part of its business, Cognizant owns multiple subsidiaries that provide IT services to a broad range of business industries, including the healthcare sector.

3.      Defendant TriZetto is a wholly-owned subsidiary of Cognizant. TriZetto is a healthcare technology service provider that provides revenue management services to physicians, hospitals, and health systems, in addition to operating a claims clearinghouse. According to its website, TriZetto's services "increase efficiencies, uncover missed revenue and maximize reimbursements" for health care systems and providers.[2] "Trizetto handles more than 4 billion payment, enrollment, and claims transactions each year in its capacity as a HIPAA business associate."[3]

4.      As part of their regular business practices, Defendants collect, maintain, and store vast quantities of individuals' personal information, which it obtained through their customers (i.e., health systems, physicians, and insurers), policyholders, and the general public. This data, which is used to facilitate payments between healthcare providers and insurance payers, includes claims and billing records.

5.      On or around October 2, 2025, TriZetto discovered unusual activity in its web portal. The web portal is used by its clients to access TriZetto systems. As part of its investigation into this

---

[1]    Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, 25 S.C. LAWYER 28-35 (May 2014), https:// https://articlegateway.com.

[2] https://www.trizettoprovider.com/who-we-serve/health-systems

[3] https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/

activity, TriZetto learned on or around November 28, 2025, that its systems had been compromised and that data containing personal information that TriZetto maintained and controlled had been breached by an unauthorized third-party (the "Data Breach"). TriZetto's investigation revealed that its system had been compromised for nearly a year—beginning in November 2024—before the breach was discovered. As a result, hackers were able to access the personal information of more than 3.4 million individuals.[4]

6.      Included in the impacted data was protected personal and health information such as names, addresses, birth dates, Social Security numbers, health insurance numbers, Medicare beneficiary numbers, provider names, health insurer names, primary insured information, and other types of demographic, health, and health insurance information, *i.e.*, Personally Identifiable Information ("PII")[5] and Protected Health Information ("PHI")[6] (together, "Private Information").[7]

7.      On December 9, 2025, more than two months after discovering the data breach, TriZetto began notifying affected healthcare providers, some of whom in turn began notifying affected individuals.[8, 9]

8.      Defendants have a duty to safeguard and protect members' information entrusted to

---

[4] *Id.*

[5] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendant, not every type of information included in that definition was compromised in the subject data breach.

[6] *Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule*, U.S. Dep't of Health and Human Services (Oct. 25, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html.

[7] Jill McKeon, *HCA Healthcare Suffers Data Breach, 11M Patients Impacted*, Health IT Security (July 10, 2023), https://healthitsecurity.com/news/hca-healthcare-suffers-data-breach.

[8] https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/

[9] *See, e.g.,* https://gardnerhealthservices.org/trizettobreachfaq/

them and could have prevented this theft by implementing adequate security measures.

9. Plaintiff and Class Members entrusted Defendants with and allowed Defendants to collect highly sensitive health and personal information as part of seeking medical treatment. They did so confidently, with the legitimate expectation that Defendants would safeguard that private information.

10. Plaintiff brings this class action because Defendants collected but failed to secure and safeguard individuals' valuable Private Information.

11. As a result, at least 3.4 million individuals had their Private Information compromised in the Data Breach. Due to Defendants' failure to protect the consumer information it was entrusted to safeguard, Plaintiff and Class Members suffered a loss of the value of their Private Information, and have been exposed to or are at imminent and significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future.

12. Defendants' intentional, willful, reckless, unfair, and negligent conduct—failing to prevent the breach, failing to limit its severity, and failing to detect it in a timely fashion—harmed Plaintiff and Class Members uniformly. For this reason, Defendants should pay for monetary damages and appropriate identity theft protection services, as well as reimburse Plaintiff and the Class for the costs caused by Defendants' substandard security practices and failure to timely disclose the same. Plaintiff and the Class are likewise entitled to injunctive and other equitable relief that safeguards their information, requires Defendants to improve their data security significantly, and provides independent, expert oversight of Defendants' security systems.

13. Defendants have also been unfairly and unjustly enriched because of their improper conduct, such that it would be inequitable for it to retain the benefits conferred upon them by Plaintiff and the Class Members. Plaintiff and Class Members never would have entrusted Defendants with their Personal Information had they known that Defendants would permit unauthorized access to

4

their Personal Information because of Defendants' complete and utter disregard for security safeguards and protocols. Plaintiff would have used other providers.

14. Defendants' failure to safeguard Plaintiff and the Class Members' highly sensitive Private Information as exposed and unauthorizedly disclosed in the Data Breach violates their common law duty and Defendants' implied contract with consumers to safeguard their Private Information.

15. Plaintiff and Class Members now face a lifetime risk of identity theft due to the nature of the information lost, and a diminishment in the value of their private data.

16. Defendants' conduct has injured Plaintiff and Class Members in the following ways: (a) the lost or diminished value of their Private Information; (b) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (c) lost opportunity costs to mitigate the Data Breach's consequences; and (d) emotional distress associated with the loss of control over their highly sensitive Private Information.

17. Defendants' failure to protect consumers' Private Information has harmed and will continue to harm millions of individuals, causing Plaintiff to seek this herein relief.

**PARTIES**

18. Plaintiff Arleene Dejesus is a resident of Wood-Ridge, New Jersey.

19. In or around March, 2026, Plaintiff received a letter notifying her that TriZetto had received her PII and PHI from her healthcare provider and that her PII and PHI were implicated in the Data Breach.

20. Plaintiff has no direct relationship with Defendants. Her PII and PHI were provided to Defendants by her healthcare provider as a condition of receiving medical care.

21. Defendant Cognizant Technology Solutions Corporation is a Delaware corporation,

5

registered to conduct business in New Jersey, with its principal place of business located at 300 Frank W. Burr Boulevard, Teaneck, New Jersey 07666.

22.     Defendant TriZetto Provider Solutions, LLC, is a limited liability company, with its principal place of business located at 3300 Rider Trail S., Earth City, Missouri 63045. TriZetto conducts business in Missouri, New Jersey, and throughout the United States.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative Class Members, and minimal diversity exists because many putative Class Members are citizens of a different state than Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

24.     This Court has personal jurisdiction over Defendants. TriZetto maintains its principal place of business in Earth City, Missouri. TriZetto regularly conducts business in Missouri.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(2), and (d) because TriZetto—which Cognizant owns and exercises controls over, including in regards to data security policies and practices[10]—maintains its principal place of business within this District and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

### A.     The Data Breach

26.     In or about November 2024, an unauthorized third-party gained access to Defendants'

---

[10] For example, the Privacy Policy linked to on TriZetto's website directs users to Cognizant's Privacy Notice, available at https://www.cognizant.com/us/en/privacy-notice.

systems and data. For nearly a year, this access went unabated and undiscovered by Defendants.

27. On or around October 2, 2025, TriZetto discovered unusual activity in its web portal. The web portal is used by its clients—physicians, hospitals, and health systems—to access TriZetto systems. As part of its investigation into this activity, TriZetto learned on or around November 28, 2025, that its systems had been compromised and that data containing personal information that TriZetto maintained and controlled had been breached by an unauthorized third-party.

28. After discovering the breach, Defendants began an investigation. The investigation revealed that "beginning in November 2024, an unauthorized actor began accessing some historical eligibility transaction reports stored on [Trizetto]'s system, that included certain PHI maintained for healthcare providers." As a result of this breach, hackers were able to access the personal information of more than 3.4 million individuals.[11]

29. According to Defendants, the breached data includes: "patient and primary insured name, address, date of birth, Social Security number, health insurance member number (which in some instances might be a Medicare beneficiary identifier), health insurer name, primary insured or dependent information, and other demographic, health, and health insurance information."[12]

30. Defendants claim to have "quickly…t[aken] steps to mitigate the issue," and similarly claim that "[t]he incident was contained the same day [TriZetto] became aware of it and there is no evidence of activity within the [TriZetto] environment by the unauthorized actor since October 2, 2025."[13]

31. More than two months after discovering unusual activity on TriZetto's web portal, on December 9, 2025, Defendants began notifying their affected customers. "Through its vendor Kroll,

---

[11] *Id.*
[12] https://mm.nh.gov/files/uploads/doj/remote-docs/trizetto-provider-solutions-20260211.pdf
[13] *Id.*

[TriZetto] made available an online portal that allowed customers to review and curate lists of affected persons and associated contact information and to opt-in to [TriZetto]'s offer to provide required notifications."[14] Beginning on or about February 6, 2026—if, and only if, Defendants' customer healthcare providers "accepted [TriZetto]'s offer to provide notifications" to individuals whose data was breached—Defendants began notifying via certified mail a subset of affected individuals of the breach.[15]

32. As noted above, however, whatever efforts Defendants took to secure their data and subsequently notify affected individuals were far too little, far too late—the hackers had already absconded with everything they wanted during nearly a year's worth of unfettered access to Defendants' systems—and Class members' sensitive data.

**B. Plaintiff's Data Has Been Accessed and Misused as a Result of the Data Breach**

33. Plaintiff received notice in March 2026 that her PII and PHI had been improperly accessed and compromised as a result of the Data Breach.

34. Since November 2024, Plaintiff has received a significant amount of spam phone calls—upwards of 10 per day—soliciting her to take out loans. Plaintiff sends all these calls to voicemail.

35. In early 2026, Plaintiff noticed fraudulent charges on one of her credit cards. The charges totaled approximately $100. Upon discovering the transactions, Plaintiff closed the card.

36. Although Plaintiff was eventually notified of the Data Breach after months of delay, her data—including her PHI—has already been compromised and has already been used by third parties engaging in fraudulent activity. Plaintiff continues to face the fallout of Defendants' Data Breach, and Plaintiff worries that her children's PII and PHI may have also been stolen in the Data

---

[14] *Id.*
[15] *Id.*

Breach.

**C.** **Defendants Failed to Comply with Regulatory Requirements and Industry Practices**

37.     The Federal Trade Commission ("FTC") has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[16]

38.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII/PHI that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

39.     The FTC also recommends that companies not maintain PII/PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[18]

---

[16] *Start With Security*, Federal Trade Commission, at 2, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited March 2, 2020).
[17] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission, https://www.ftc.ov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited March 2, 2020).
[18] *See* FTC, *Start With Security*, *supra* n.16.

9

40.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

41.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data. The body of law created by the FTC recognizes that failure to restrict access to information[19] and failure to segregate access to information[20] may violate the FTC Act.

42.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data (i.e., PII/PHI) constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

43.     Further, Defendants are required to comply with the HIPAA Privacy Rules, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy Rule and the Security Rule set the nationwide standards for protecting health information, including health information stored electronically.

44.     The Security Rule requires Defendants to do the following:

a.      Ensure the confidentiality, integrity, and availability of all electronic protected health

---

[19] *In re Labmd, Inc*, No. 9357, 2016 WL 4128215, at 15 (F.T.C. July 28, 2016) ("Procedures should be in place that restrict users' access to only that information for which they have a legitimate need.").
[20] *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 258 (3d Cir. 2015) (companies should use "readily available security measures to limit access between" data storage systems).

information the covered entity or business associate creates, receives, maintains, or transmits;

b.       Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.       Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.       Ensure compliance by its workforce.[21]

45.       Pursuant to HIPAA's mandate that Defendants follow "applicable standards, implementation specifications, and requirements . . . with respect to electronic protected health information," 45 C.F.R. § 164.302, Defendants were required to, at minimum, to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

46.       Defendants are also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

47.       Both HIPAA and HITECH obligate Defendants to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive patient PII. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. §17902. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' Private Information or to comply with applicable industry standards

---

[21] *Summary of the HIPAA Security Rule*, U.S. Dep't of Health and Human Services (Oct. 19, 2022), https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html.

constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

48. Upon information and belief, Defendants were at all times fully aware of their obligation to protect the Private Information of patients; Defendants were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly egregious given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class Members.

49. Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

50. The hackers accessed and acquired files in Defendants' computer systems containing Private Information of Plaintiff and Class Members, including their name, address, date of birth, Social Security number, health insurance member number (which in some instances might be a Medicare beneficiary identifier), health insurer name, primary insured or dependent information, and other demographic, health, and health insurance information. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

51. Defendants retain and store this information and derive a substantial economic benefit from the Private Information that they collect. But for the collection of Plaintiff's and Class Members' Private Information, Defendants would be unable to provide their services.

52. By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

53. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality

of their Private Information and relied on Defendants to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

54.     Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members.

55.     Upon information and belief, Defendants (in part through healthcare providers) made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

56.     For example, Cognizant represents on its website that it "implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information. The data collected via our Sites is stored in a secure server with our ISP who will take periodic backups of such data."[22]

57.     Defendants' negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D.     Defendants' Knowledge of Cyber Security Threats**

58.     Defendants knew or should have known of the risk of a cyberattack, because healthcare entities in possession of private information are particularly susceptible to cyberattacks.

59.     Data thieves regularly target entities in the healthcare industry like Defendants due to the highly sensitive information that they maintain. Defendants knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

---

[22] https://www.cognizant.com/us/en/privacy-notice

60.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting healthcare entities—like Defendants—that collect and store Private Information and other sensitive information, preceding the date of the Data Breach. Between 2020 and 2021, attacks on the healthcare industry increased 71%, making it the fifth most common industry targeted by cyberattacks.[23]

61.     In light of recent high profile data breaches at other industry-leading companies, including, e.g., Trinity Health (3.3 million patients, May 2020); Shields Healthcare Group (2 million patients, March 2022); Community Health Systems (1.2 million patients, January 2023); PharMedica (4.8 million patients, March 2023); Regal Medical Group (3.3 million patients, December 2022); Harvard Pilgrim Healthcare (2.5 million patients, April 2023), Defendants knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.[24]

62.     The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[25]

63.     Entities in custody of PHI reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach. In fact, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare

---

[23] Check Point Research Team, *Check Point Research: Cyber Attacks Increased 50% Year over Year*, Check Point (Jan. 10, 2022), https://blog.checkpoint.com/security/check-point-research-cyber-attacks-increased-50-year-over-year.

[24] For example, of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7%, were in the medical or healthcare industry. *See 2021 Data Breach Annual Report*, ITRC, at 6 (Jan. 2022), https://notified.idtheftcenter.org.

[25] *Id.*

they did not receive in order to restore coverage.[26] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the victims were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals, and detrimentally impact the economy as a whole.[27]

64.     Despite the prevalence of data breaches and data security compromises in the health care industry, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

65.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their server(s), amounting to *millions* of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

66.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

67.     The ramifications of Defendants' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

68.     As an entity in possession of Patients' Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if their data security systems were

---

[26] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims.
[27] *Id.*

breached. This includes the significant costs imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

**E.** **Defendants Had and Breached a Duty to Safeguard Plaintiff and Class Members' Private Information That They Chose to Collect and Keep.**

69.    Defendants owed Plaintiff and Class Members a duty to safeguard their private information.

70.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision- making.

71.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal consumer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

72.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

73.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

74.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate

measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

75. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

76. Defendants failed to properly implement basic data security practices.

77. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to the PII and PHI it was in possession of or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

78. Upon information and belief, Defendants were at all times fully aware of its obligation to protect the PII and PHI it was in possession of. Defendants were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

79. In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class Members.

17

80. Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees and others who accessed Private Information within their computer systems on how to adequately protect Private Information.

81. Defendants owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

82. Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

83. Defendants owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

84. Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

**F.      The Data Breach Caused Harm to Plaintiffs and the Class**

85. The exponential cost to Plaintiff Dejesus and Class Members resulting from the Data Breach cannot be overstated. Criminals can use victims' Private Information to open new financial accounts, incur charges in credit, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII and PHI was stolen becomes aware

of it.[28] Any one of these instances of identity theft can have devastating consequences for the victim—causing years of often irreversible damage to their credit scores, financial stability, and personal security.

86.     According to a *Reuters* investigation that included interviews with nearly a dozen healthcare executives, fraudsters commonly use stolen medical and protected health data "to create fake IDs to buy medical equipment or drugs that can be resold, or they combine a patient number with a false provider number and file made-up claims with insurers."[29]

87.     Defendants were or should have been aware that they were collecting highly valuable data, which has increasingly been the target of data breaches in recent years.

88.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

89.     Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit from their

---

[28] *See, e.g.*, *Report to Congressional Requesters*, United States Government Accountability Office (June 2007), http://www.gao.gov/assets/270/262899.pdf; Melanie Lockert, *How do hackers use your information for identity theft?*, CreditKarma (Oct. 1, 2021), https://www.creditkarma.com/id-theft/i/how-hackers-use-your-information; Ravi Sen, *Here's how much your personal information is worth to cybercriminals – and what they do with it*, PBS (May 14, 2020), https://www.pbs.org/newshour/science/heres-how-muchyour-personal-information-is-worth-to-cybercriminals-and-what-they-do-with-it; Alison Grace Johansen, *4 Lasting Effects of Identity Theft*, LifeLock by Norton (Feb. 4, 2021), https://lifelock.norton.com/learn/identity-theft-resources/lasting-effects-ofidentity-theft.

[29] Jim Finkle, *Your medical record is worth more to hackers your credit card*, Reuters (Sept. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924.

misfortune.

***Diminution of Value of Private Information.***

90.     Private Information is valuable property.[30] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

91.     The Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements.

92.     This type of data commands a much higher price on the dark web. As Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information … [is] worth more than 10x on the black market."[31]

93.     An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[32] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[33] Consumers

---

[30] *See Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*" at 2, U.S. Government Accountability Office (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[31] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem- hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[32] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed July 11, 2023).

[33] David Lazarus, Column: *Shadowy data brokers make the most of their invisibility cloak*, Los Angeles Times (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

who agree to allow the startup Caden to track their online habits can receive up to $50 a month.[34]

94.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

95.     The fraudulent activity resulting from the Data Breach and harming Class Members may not come to light for years.

96.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

97.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their network, amounting to millions of individuals' detailed Private Information and thus the significant number of individuals who would be harmed by the exposure of the unencrypted data.

98.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

***Loss of Time to Mitigate the Risk of Identity Theft and Fraud***

99.     As a result of the recognized risk of identity theft, when a data breach occurs and an

---

[34] Wilfred Chan, *This startup hopes to pay users $50 a month to sell companies their data*, Fast Company (Mar. 21, 2023), https://www.fastcompany.com/90865694/caden-hopes-to-pay-users-50-dollars-a-month-to-sell-companies-their-data.

individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

100. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the severity of the Data Breach upon receiving their Notice Letters.

101. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[35]

102. Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[36]

103. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and

---

[35] *See* GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. Government Accountability Office (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[36] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last accessed July 23, 2023).

will continue to incur such damages in addition to any fraudulent use of their Private Information.

104. Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' network, amounting to millions of individuals' detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

105. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

### *Impact Of Identity Theft Can Have Ripple Effects*

106. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, in addition to the irreparable damage that may result from the theft of a social security number, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[37]

107. And, the impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2013-2016 described that the identity theft they experienced affected their ability to get credit cards and obtain loans such as student loans or mortgages.[38] For some victims, this could mean the difference between going to college or not, becoming a homeowner

---

[37] U.S. Dep't of Justice, *Victims of Identity Theft, 2014* (Nov. 13, 2017),
http://www.bjs.gov/content/pub/pdf/vit14.pdf.
[38] *Identity Theft: The Aftermath 2017*, Identity Theft Resource Center,
https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last visited July 27, 2023).

or not, or having to take out a high interest payday loan versus a lower-interest loan.

108. It is no wonder then that identity theft exacts a severe emotional toll on its victims.

109. The 2017 Identity Theft Resource Center survey[39] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed

- 67% reported anxiety

- 66% reported feelings of fear related to personal financial safety

- 37% reported fearing for the financial safety of family members

- 24% reported fear for their physical safety

- 15.2% reported a relationship ended or was severely and negatively impacted by the identity theft

- 7% reported feeling suicidal.

110. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances

- 37.1% reported an inability to concentrate / lack of focus

- 28.7% reported they were unable to go to work because of physical symptoms

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues)

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[40]

111. There may also be a significant time lag between when PII/PHI is stolen and when it

---

[39] *Id.*
[40] *Id.*

is actually misused. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> **[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.**[41]

112.    As the result of the Data Breach, Plaintiff and Class Members have suffered and/or will suffer or continue to suffer economic loss, a substantial risk of future identity theft, and other actual harm for which they are entitled to damages, including, but not limited to, the following:

- losing the inherent value of their Private Information;

- losing the value of Defendant's implicit promises of adequate data security;

- identity theft and fraud resulting from the theft of their Private Information;

- costs associated with the detection and prevention of identity theft and unauthorized use of their medical and health insurance information;

- costs associated with purchasing credit monitoring and identity theft protection services;

- unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

- lowered credit scores resulting from credit inquiries following fraudulent activities;

- costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance and

---

[41] *See,* GAO, *Report to Congressional Requesters, supra,* n.28.

annoyance of dealing with the repercussions of the Data Breach; and

- the continued imminent and certainly impending injury flowing from potential fraud and identify theft posed by their Private Information being in the possession of one or many unauthorized third parties.

113. Additionally, Plaintiff and Class Members place significant value in data security.

114. Because of the value consumers place on data privacy and security, companies with robust data security practices can command higher prices than those who do not. Indeed, if consumers did not value their data security and privacy, companies like Defendants would have no reason to tout their data security efforts to their actual and potential customers.

115. Consequently, had consumers known the truth about Defendants' data security practices—that Defendants would not adequately protect and store their data—they would not have entrusted their Private Information to Defendants, utilized health services that relied on Defendants' services, or paid as much for such services or benefits.

## CLASS ACTION ALLEGATIONS

116. Pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of herself and on behalf of all members of the following Class and Subclass:

**Nationwide Class:**

All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach.

**New Jersey Subclass:**

All individuals whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach, and who resided in New Jersey at the time of the Data Breach.

117. Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants

have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

118. Plaintiff reserves the right to amend the definition of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

119. **Numerosity**: The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, upon information and belief, more than 3.4 million individuals are affected by the Data Breach. Those individuals' names and addresses are available from Defendants' records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods. Joinder of all Class Members is impracticable.

120. **Commonality**: This action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

    a.    Whether Defendants had a duty to protect the Plaintiff's and the Class Members' Private Information;

    b.    Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting and storing their Private Information;

    c.    Whether Defendants failed to take reasonable and prudent security measures;

    d.    Whether Defendants were negligent in failing to implement reasonable and adequate security procedures and practices;

    e.    Whether Defendants' security measures to protect their systems were reasonable in light of known legal requirements;

    f.    Whether Defendants' efforts (or lack thereof) to ensure the security of individuals' Private Information were reasonable in light of known legal

requirements;

g.     Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

h.     Whether Defendants' conduct constituted unfair or deceptive trade practices;

i.     Whether Defendants' failure to institute adequate security measures amounted to breach of an implied contract;

j.     Which security procedures and notification procedures Defendants should be required to implement;

k.     Whether Defendants violated state consumer protection and data breach statutes in connection with the actions described herein;

l.     Whether Defendants failed to notify Plaintiff and Class Members as soon as practicable and without delay after the Data Breach was discovered;

m.     Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach and/or the loss of the Private Information of Plaintiff and Class Members;

n.     Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Defendants' failure to reasonably protect their Private Information; and

o.     Whether Plaintiff and Class Members are entitled to damages or injunctive relief.

121.     **Typicality:** Plaintiff's claims are typical of those of the other Class Members because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

122.     This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making

final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

123. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

124. **Superiority**: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that millions of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

125. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the

29

costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

126. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

127. Further, Defendants have acted on grounds that apply generally to the Class as a whole, such that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION

### COUNT 1
### NEGLIGENCE
### On Behalf of Plaintiff and the Nationwide Class

128. Plaintiff repeats and alleges the factual allegations above as if fully set forth herein.

129. Defendants acquired, maintained, and profited from Plaintiff's and Class Members' sensitive Private Information. Defendants owed a duty to Plaintiff and Class Members—arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of their data safety shortcomings resulting in an intrusion—to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' information was adequately secured from unauthorized access.

130. Defendants had common law duties to prevent foreseeable harm to Plaintiff and Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable

victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Private Information because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendants also knew that it was more likely than not Plaintiff and other Class Members would be harmed by such theft.

131. Defendants are covered by HIPAA (45 C.F.R. § 160.102) and thus required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

132. Defendants owed a duty to Plaintiff and Class Members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' Private Information.

133. Defendants also had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the Private Information that was collected and stored on their servers.

134. Defendants owed a duty to disclose the material fact that their data security practices were inadequate to safeguard Plaintiff's and Class Members' Private Information.

135. Defendants also had independent duties under Plaintiff's and Class Members' state laws that required Defendants to reasonably safeguard Plaintiff's and Class Members' PII and PHI, and promptly notify them about the Data Breach.

136. Defendants had a special relationship with Plaintiff and Class Members as a result of being entrusted with their Private Information, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions. Moreover,

31

Defendants were capable of protecting their networks and systems, and the PII and PHI it stored on them, from unauthorized access.

137. Defendants breached their duties by, among other things: (a) failing to implement and maintain appropriate data security practices to safeguard Plaintiff's and Class Members' Private Information, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that their data security practices were inadequate to safeguard Plaintiff's and Class Members' Private Information.

138. But for Defendants' breach of their duties, including the duty to use reasonable care to protect and secure Plaintiff's and Class Members' Private Information, Plaintiff's and Class Members' Private Information would not have been accessed by unauthorized parties.

139. Plaintiff and Class Members were foreseeable victims of Defendants' inadequate data security practices. Defendants knew or should have known that a breach of their data security systems would cause damage to Plaintiff and Class Members.

140. It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information would result in unauthorized access to Defendants' networks, databases, and computers that stored or contained Plaintiff's and Class Members' Private Information.

141. As a result of Defendants' negligent failure to prevent the Data Breach, Plaintiff and Class Members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and

32

Class Members' Private Information has also diminished the value of the Private Information.

142. The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of their aforementioned duties.

143. Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT 2
## NEGLIGENCE *PER SE*
## On Behalf of Plaintiff and the Nationwide Class

144. Plaintiff repeats and alleges the factual allegations above as if fully set forth herein.

145. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and appropriate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

146. In addition, under state data security statutes, Defendants had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Private Information.

147. Defendants breached their duties to Plaintiff and Class Members, under the FTC Act and the state data security statutes, by failing to provide fair, reasonable, or appropriate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

148. Defendants are covered by HIPAA (45 C.F.R. § 160.102) and are required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Par108501t 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. HIPAA prohibits unauthorized disclosures of "protected health information," which includes the information at issue here.

149. Plaintiff and Class Members were foreseeable victims of Defendants' violations of the

FTC Act, HIPAA, and state data security statutes. Defendants knew or should have known that the failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and Class Members.

150. Defendants' failure to comply with the applicable laws and regulations constitutes negligence per se.

151. But for Defendants' violation of the applicable laws and regulations, Plaintiff's and Class Members' Private Information would not have been accessed by unauthorized parties.

152. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injuries and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT 3
## BREACH OF IMPLIED CONTRACT
## On Behalf of Plaintiff and the Nationwide Class

153. Plaintiff repeats and alleges the factual allegations above as if fully set forth herein.

154. Defendants—through their customers—provided services to Plaintiff and Class Members in exchange for payment.

155. Defendants also required Plaintiff and the Class Members to provide Defendants—through Plaintiff's and Class Members' healthcare providers—with their Private Information to receive medical care.

156. Accordingly, Defendants impliedly promised to protect Plaintiff's and Class Members' Private Information through adequate data security measures.

157. Plaintiff and the Class Members accepted Defendants' offer by providing Private Information to their healthcare providers who in turn provided it to Defendants in exchange for receiving Defendants' services, and then by paying for and receiving the same.

158. Plaintiff and Class Members would not have entrusted their Private Information to

34

Defendants but for the above-described agreement with Defendants.

159. Defendants materially breached their agreements with Plaintiff and Class Members by failing to safeguard such Private Information, violating industry standards necessarily incorporated in the agreement.

160. Plaintiff and Class Members have performed under the relevant agreements.

161. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms.

162. Defendants' conduct as alleged herein violated this implied covenant of good faith and fair dealing inherent in every contract.

163. The losses and damages Plaintiff and Class Members sustained as described herein were the direct and proximate result of Defendants' breach of the implied contracts with them, including breach of the implied covenant of good faith and fair dealing.

## COUNT 4
### Violation of New Jersey Consumer Fraud Act ("NJCFA")
### (N.J.S.A. §§ 56:8-1, et seq.)
### On Behalf of Plaintiff and the New Jersey Subclass

164. Plaintiff repeats and alleges the factual allegations above as if fully set forth herein.

165. The NJCFA makes certain acts unlawful for persons engaged in any commercial practice. N.J. Stat Ann. § 56:8-2 (West 2022). Violating New Jersey's data breach notice statute is an unlawful practice under the NJCFA. N.J. Stat. Ann. § 56:8-160 (West 2005). Violating New Jersey's Identity Threat Prevention Act is also an unlawful practice under the NJCFA. N.J. Stat. Ann. § 56:11-44–§ 56:11-52 (West 2006).

166. The notice statute requires "any business that conducts business in New Jersey, or any public entity that compiles or maintains computerized records that include personal information" to

provide notice without unreasonable delay to New Jersey residents "whose personal information was, or is reasonably believed to have been, accessed by an unauthorized person." N.J. Stat. Ann. § 56:8-163(a) (West 2019).

167. Defendants are businesses that compile and maintain computerized records that contain personal information as defined in N.J. Stat. Ann. § 56:8-161 (West 2019). Defendants, therefore, were required to disclose to Plaintiff and New Jersey Subclass Members the existence of the Data Breach without unreasonable delay.

168. Defendants became aware of the Data Breach as early as October 2, 2025 and no later than November 28, 2025, but failed to provide the required written notice to Plaintiff and the New Jersey Subclass Members.

169. Plaintiff and the New Jersey Subclass Members did not know they were impacted by the Data Breach until they received direct notice from TriZetto months after the Data Breach. That notice is insufficient under New Jersey law.

170. As a direct and proximate result of Defendants' inadequate security measures and the resulting Data Breach, Plaintiff and the New Jersey Subclass Members suffered and will continue to suffer injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) uncompensated value of their PII; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) actual misuse of the compromised data; (vii) nominal damages; and (viii) the continued risk to their PII, which remains (a) unencrypted and available for unauthorized third parties to access and abuse; and (b) backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Salesforce fails to undertake appropriate and adequate measures to protect their PII.

171. Plaintiff and the New Jersey Subclass Members seek all monetary and nonmonetary

relief allowed by law, including any economic damages; nominal damages; enhanced or treble damages available under the law; court costs; reasonable and necessary attorneys' fees; injunctive relief; and any other relief available by law and that the Court deems proper.

## REQUEST FOR RELIEF

172. WHEREFORE Plaintiff, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

    a.    permanent declaratory and injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

    b.    compensatory, consequential, and general damages in an amount to be determined at trial;

    c.    disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices, in amounts to be determined at trial;

    d.    statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

    e.    costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

    f.    pre- and post-judgment interest at the maximum legal rate; and

    g.    all such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: April 8, 2026

Respectfully submitted,

*/s/ Amber L. Schubert*
Amber L. Schubert (*pro hac vice*)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St, Ste 200
San Francisco, CA 94123
Tel: 415-788-4220
Fax: 415-788-0161
aschubert@sjk.law

Sabita J. Soneji (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA  94612
Telephone: (510) 254-6808
Email: ssoneji@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:26-cv-03880-MCA-AME

HALCARZ v. COGNIZANT TECHNOLOGY SOLUTIONS
CORPORATION et al
Assigned to: Judge Madeline Cox Arleo
Referred to: Magistrate Judge Andre M. Espinosa
Cause: 28:1332 Diversity-Other Contract

Date Filed: 04/13/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**ANDREW HALCARZ**
*Individually and on Behalf of All Others Similarly*
*Situated*

represented by **ANDREW JIMIN HEO**
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
215-963-0600
Email: aheo@barrack.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**COGNIZANT TECHNOLOGY SOLUTIONS
CORPORATION**

**Defendant**

**TRIZETTO PROVIDER SOLUTIONS, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2026 | 1 | COMPLAINT against All Defendants ( Filing and Admin fee $ 405 receipt number ANJDC-17303495) with JURY DEMAND, filed by Andrew Halcarz. (Attachments: # 1 Civil Cover Sheet)(HEO, ANDREW) (Entered: 04/13/2026) |
| 04/13/2026 | | Case assigned to Judge Madeline Cox Arleo and Magistrate Judge Andre M. Espinosa. (tjg, ) (Entered: 04/13/2026) |
| 04/14/2026 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised, pursuant to Fed. R. Civ. P. 7.1(a)(2), unless the Court orders otherwise, in any action filed or removed to this Court, in which jurisdiction is based upon diversity under 28 U.S.C. 1332(a), a party or intervenor must file a disclosure statement naming and identifying the citizenship of every individual or entity whose citizenship is attributed to that party or intervenor. A party, intervenor or proposed intervenor must file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the Court. Click here to complete the Diversity Disclosure Statement, once complete, file it using the event Diversity Disclosure Statement. (lag, ) (Entered: 04/14/2026) |
| 04/14/2026 | 2 | SUMMONS ISSUED as to COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, TRIZETTO PROVIDER SOLUTIONS, LLC. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (lag, ) (Entered: 04/14/2026) |
| 04/14/2026 | 3 | Diversity Disclosure Statement by ANDREW HALCARZ. (HEO, ANDREW) (Main Document 3 replaced on 4/15/2026) (mj, ). (Entered: 04/14/2026) |

Case MDL No. 3185 Document 65-3 Filed 04/17/26 Page 42 of 145

| | |
|---|---|
| 04/15/2026 | CLERK'S QUALITY CONTROL MESSAGE - The 3 Diversity Disclosure Statement filed by ANDREW HEO on 4/14/2026 was uploaded prior to being flattened. Before uploading fillable forms to ECF you must flatten the file to prevent other users from manipulating or editing the information. The easiest way to flatten a PDF form is by selecting Print to PDF and saving the flattened form, other PDF software may differ. Please visit our website under Flattening PDF Forms for guidance. Your document has been corrected. This message is for informational purposes only. (mj) (Entered: 04/15/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/15/2026 18:52:25 | | | |
| **PACER Login:** | CCMS0034 | **Client Code:** | Cognizant |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-03880-MCA-AME Start date: 1/1/1980 End date: 4/15/2026 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW HALCARZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and TRIZETTO PROVIDER SOLUTIONS, LLC,<br><br>    Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andrew Halcarz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Cognizant Technology Solutions Corporation ("Cognizant") and Defendant TriZetto Provider Solutions, LLC ("TriZetto") (collectively referred to as "Defendants") and alleges, upon personal knowledge as to his own actions and upon information and belief, including his counsels' investigations, as to all other matters, as follows:

## I.    NATURE AND SUMMARY OF THE ACTION

1.    This action stems from Defendants' failure to secure its software programs which led to the unnecessary breach of sensitive personal information of millions of individuals, including Plaintiff.

2.    Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard sensitive personally identifiable information ("PII") and protected health

1

information ("PHI") provided by and belonging to, the patients and policyholders of Defendants' clients.

3.      Cognizant is a professional services and consulting firm and recorded revenue of over $21 billion in 2025. Trizetto provides revenue management services to the healthcare industry. Cognizant acquired TriZetto in 2014 for $2.7 billion. As part of Cognizant and TriZetto's regular business activities, Defendants collect, maintain and store the Private Information of the patients and policyholders of their clients.

4.      It was reported that on October 2, 2025, TriZetto discovered suspicious activity in its systems and determined that there had been unauthorized access of its network and exfiltration of sensitive information by cybercriminals (the "Data Breach").[1]

5.      Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiff and Class members; and (ii) warn Plaintiff and Class members of their inadequate information security practices.  Defendants' conduct amounts to at least negligence and violates federal statutes designed to prevent or mitigate this very harm.

6.      Plaintiff and Class Members have suffered actual, present and foreseeable injuries as a direct result of the Data Breach, including: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft for their respective lifetimes; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the present and/or imminent injury arising from actual and/or potential fraud and identity theft

---

[1] *Cognizant's TriZetto Provider Solutions Data Breach Impacted Over 3.4 Million Patients*, Security Affairs, *available at*: https://securityaffairs.com/189149/data-breach/cognizants-trizetto-provider-solutions-data-breach-impacted-over-3-4-million-patients.html (last visited April 6, 2026).

posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (f) damages to and diminution in value of their personal data entrusted to Defendants on the mutual understanding that Defendants would safeguard their Private Information against theft and not allow access to and misuse of their personal data by others; and (g) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further injurious breaches, so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information. Plaintiff and Class Members, at the very least, are entitled to damages and injunctive relief tailored to address the vulnerabilities exploited in the breach, and designed to protect Plaintiff and Class Members' Private Information, as well as an order directing the destruction and deletion of all Private Information for which Defendants cannot demonstrate a reasonable and legitimate purpose for continuing to maintain possession of such Private Information.

7.    Defendants understand the need to protect the privacy of their clients and their customers and use security measures to protect its customers' information from unauthorized disclosure. And as a sophisticated financial entity that maintains private and sensitive consumer information, Defendants and their corporate affiliates further understood the importance of safeguarding Private Information.

8.    Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff and Class members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

3

9.      Furthermore, Defendants should have been vigilant in protecting Private Information as Cognizant itself warned of future cybersecurity incidents arising from the exact vulnerability that it experienced in the Data Breach.

10.      In the wake of a 2024 data breach at Change Healthcare, a healthcare technology company that provides services similar to those of Defendants, Defendants attempted to capitalize on their competitor's cyber-attack to advertise how their systems were superior to those of Change Healthcare. Specifically, Cognizant published a blogpost which stated "while it's unknown exactly how Blackcat first accessed Change Healthcare's network, access control is a major issue in healthcare, where so many parties require access to one another's data." . . . "There's so much third-party interaction going on," . . . "The first thing we tell clients is that you need to know who has access to your apps."[2]

11.      It has been reported that the Data Breach was due to an "unauthorized actor accessing records linked to insurance eligibility verification transactions."[3]

12.      As a result of Defendants' actions, the Private Information of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

13.      Plaintiff by this action seeks compensatory damages together with injunctive relief to remediate Defendants' failures to secure their and the other Class Members' Private Information, and to provide damages, among other things, for Plaintiff and Class Members to

---

[2] *The Data Breach That Woke Up The Healthcare Industry*, Cognizant, *available at*: https://www.cognizant.com/us/en/insights/insights-blog/the-data-breach-that-woke-up-the-healthcare-industry-wf2527300 (last visited April 1, 2026).
[3] *Supra*, see note 1.

secure identity theft insurance, and credit repair services for Class Members' respective lifetimes to protect the Class of Data Breach victims from identity theft and fraud.

## II.   JURISDICTION AND VENUE

14. This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

15. Venue is proper under 18 U.S.C § 1391(b)(1) in this Judicial District as substantial acts and part of the events or omissions giving rise to the claims as alleged in this Class Action Complaint occurred in this District.

16. The District of New Jersey has personal jurisdiction over Defendants because Cognizant is headquartered in the State of New Jersey and both Defendants regularly conduct business in the State of New Jersey.

## III.   PARTIES

17. Plaintiff Andrew Halcarz is a citizen of Illinois, residing in Chicago.

18. Plaintiff Halcarz learned of the Data Breach after receiving a notice of the Data Breach, dated March 17, 2026, informing him that him that his Private Information, including his name, address, date of birth, health insurance member number, provider name, health insurer name, primary insured information, and other demographic, health, and health insurance information was impacted by the Data Breach.

19. The data breach notice received by Plaintiff Halcarz also stated that "[o]n or around November 28, 2025, Defendants learned that the data impacted by the Data Breach may have

included Plaintiff Halcarz' Private Information. Despite this, Defendants waited until March 17, 2026, to inform him of the Data Breach.

20.    Plaintiff Halcarz very careful with his Private Information and routinely checks his credit reports to protect  against fraud.

21.    Plaintiff Halcarz would not have entrusted his Private Information to Defendants or otherwise would have permitted his Private Information be provided to Defendants, had he known that Defendants' data security practices were inadequate and susceptible to unauthorized data disclosures and privacy violations.

22.    Upon information and belief, Defendant Cognizant is a Delaware corporation and maintains a principal place of business at 300 Frank W Burr Blvd, Suite 600, Teaneck, New Jersey 07666.

23.    Upon information and belief, Defendant TriZetto, is a limited liability corporation with its principal place of business at 330 Rider Trail S., Earth City, Missouri 63045.

**IV. FACTUAL ALLEGATIONS**

24.    Cognizant is a professional services and consulting firm and recorded revenue of over $21 billion in 2025. Cognizant acquired TriZetto in 2014 for $2.7 billion.

25.    TriZetto, a wholly-owned subsidiary of Cognizant, provides revenue management and claims clearinghouse services to physicians, hospitals, and health systems.

26.    As part of Cognizant and TriZetto's regular business activities, Defendants collects, maintains and stores the Private Information of their clients' patients and policyholders.

27.    Defendants implicitly and/or explicitly represented to Plaintiff and Class Members, that their Private Information would be secured.[4]

---

[4] *Privacy Policy*, Cognizant, available at: https://www.cognizant.com/us/en/privacy-notice?  (last visited April 6, 2026).

6

28. Specifically, Cognizant states on its website that "Cognizant Technology Solutions Corporation and its affiliated companies [ ] are firmly committed to protecting your privacy" and "Cognizant implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information."

29. Defendants had duties and obligations through common law, federal regulations, contracts, industry standards, and their representations to Plaintiff and Class Members that Defendants would adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from third party actors.

30. Despite possessing such duties and obligations, Defendants' systems contained vulnerabilities which were exploited by cybercriminals. Had Defendants properly secured their platform, and/or had they properly implemented security measures, Plaintiff's and Class Member's Private Information would not have been at risk as a result of Defendants' deficient security measures.

31. It was reported that, on October 2, 2025, Defendants detected that cybercriminals had repeatedly accessed its network starting in November 2024 and had stolen sensitive Private Information. As admitted by Defendants, the Data Breach had been ongoing for almost a year before it was detected.

32. Defendants took several weeks to identify what Private Information had been breached, and it was only on November 28, 2025 that Defendants revealed that the Data Breach had occurred and that it had involved personal and health data, including names, addresses, birth dates, Social Security numbers, insurance details, and provider information.

*The Value of Personally Identifiable Information (PII) and Protected Health Information (PHI)*

33.    PII is very valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[5]

34.    Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6]

35.    Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

36.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of

---

[5] George, A. (2019, Oct. 16). *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs,* Digital Trends, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited April 6, 2026).
[6] Luthi, B. (2017, Dec. 6). *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited April 6, 2026).
[7] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 6, 2026).

a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

37.    Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[8]

38.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, financial history, and Social Security number.

39.    This data commands a much higher price on the black market. "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[9]

40.    Identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police, among other forms of fraud.

41.    The Private Information of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

42.    Further, there may be a time lag between when harm occurs and when it is discovered and between when Private Information is stolen and when it is used. According to the

---

[8] Naylor, B. (Feb. 9, 2015). *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited April 6, 2026).
[9] Greene, T. (Feb. 6, 2015). *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited April 6, 2026).

U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

43. Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damage in addition to any fraudulent use of their Private Information.

### *Defendants Failed To Comply With HIPAA*

44. Defendants are governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its relevant regulatory rules. See 45 C.F.R. § 160.102.

45. Defendants, as 'health-tech' organizations, provide data services related to healthcare services and is classified as a Health Care Clearinghouse, and defined by HIPAA as a "Covered Entity." See 45 C.F.R. § 160.103.

46. In the alternative, Defendants, if not considered to be a Health Care Clearinghouse, are defined under HIPAA to be considered as a "Business Associate." *Id*.

47. Both Covered Entities and Business Associates are governed by HIPAA rules, and are required to protect against reasonably anticipated threats to the security of sensitive patient health information.

48. These rules include, but are not limited to, the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health

---

[10] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last visited April 6, 2026).

Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

49. HIPAA rules establish national standards to protect patient's health information, as defined by the Act as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

50. HIPAA requires Covered Entities and Business Associates to also implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components. *See* C.F.R. Part 160 and Part 164, Subparts A and C.

51. Additionally, HIPAA also requires Covered entities and Business Associates to provide notification following a breach of unsecured protected health information by way of the HIPAA Breach Notification Rule. *See* 45 CFR §164.400-414.

52. Pursuant to the Breach Notification Rule, Defendant was required to provide affected individuals with notice of the breach, without unreasonable delay and in no case later than sixty days following the discovery of the breach. *Id.*

53. Additionally, Defendant was required to provide a brief description of the breach, the types of information involved in the breach, the steps affected individuals should take to protect themselves from potential harm, a brief description of what Defendant was doing to investigate the breach, mitigate the harm, and prevent further breaches. *Id.*

54. Plaintiff Halcarz was not informed of the Data Breach until March 17, 2026, several months after Defendants discovered the Data Breach, in clear violation of this rule.

55. Defendants failed to maintain the privacy and security of the PHI that they were responsible for, and failed to inform affected individuals that their Private Information had been stolen. Upon information and belief, Defendants violated HIPAA by failing to:

    a.     Maintain an adequate data security system;

    b.     Adequately protect Plaintiff's and the Class Members' Private Information;

c.  Ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  Implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that had been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.  Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.  Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding PHI, in violation of 45 C.F.R. § 164.306(a)(3);

h.  Train its employees and agents effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

i.  Failing to timely and adequately notify affected individuals of the Data Breach;

j.  Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, by failing to encrypt the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" in violation of 45 CFR § 164.304.

56. The Data Breach resulted from a combination of insufficiencies that demonstrate how Defendants failed to comply with safeguards mandated by HIPAA regulations.

### *Defendant Failed To Comply With FTC Guidelines*

57. The Federal Trade Commission ("FTC") issued several business guidelines emphasizing the critical importance of incorporating reasonable data security practices into all business operations. These guidelines were designed to help businesses understand and fulfill their responsibility to protect customer data.

58. In 2016, the FTC set forth cybersecurity guidelines for businesses, and published "Protecting Personal Information: A Guide for Business.[11]" These guidelines outline essential practices such as (a) protect the personal customer information that they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems. The FTC guidelines further recommend that businesses use an intrusion detection system, monitor all incoming traffic for unusual activity, monitor for large amounts of data being transmitted from their system, and have a response plan ready in the event of a breach.

59. The FTC's guidelines also advise businesses, including healthcare businesses, to not retain PII and PHI longer than necessary, to restrict access to sensitive data, enforce the use of complex passwords, adopt industry-tested security methods, monitor networks for suspicious activity, and ensure that third- party service providers implement adequate security measures. *Id*.

60. The FTC has taken enforcement actions against businesses, including healthcare providers and their associates, for failing to protect customer data adequately. These actions are treated as unfair acts or practices under Section 5 of the Federal Trade Commission Act ("FTCA"). *See* 15 U.S.C. § 45.

---

[11] *Start With Security: A Guide For Businesses*, FTC, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited April 6, 2026).

61.     Defendants were required to implement fundamental data security practices in line with FTC guidelines. Its failure to do so, particularly in safeguarding against unauthorized access to patients' PII and PHI, is considered an unfair practice under the Section 5 of the FTC Act.

62.     Defendants were fully aware of their obligations to protect sensitive patient data and the severe consequences of failing to meet these obligations. Despite this knowledge, Defendants did not take the necessary steps to comply with the FTC guidelines, leaving patient data vulnerable and exposed.

63.     Defendants' failure to implement basic security measures, is not only a failure to comply with FTC guidelines, but also unnecessarily risked the privacy and security of its client's data.

64.     Additionally, the FTC requires businesses that maintain medical information to provide timely notice to affected individuals of a data breach by way of the Health Breach Notification Rule. 16 C.F.R. 318.

65.     This rule applies to vendors of personal health records and their third party service providers, pursuant to the HITECH Act. *Id*.

66.     Pursuant to the Breach Notification Rule, Defendants were required to notify affected individuals, media, and the FTC of the breach, without unreasonable delay and in no case later than sixty days following the discovery of the breach. *Id*.

67.     Additionally, Defendants were required to provide a brief description of the breach, the types of information involved in the breach, the steps affected individuals should take to protect themselves from potential harm, a brief description of what Defendants were doing to investigate the breach, mitigate the harm, and prevent further breaches. *Id*.

68.     Defendants' untimely notification of the Data Breach, approximately five months after the Data Breach was discovered, is in clear violation of this rule.

***Defendants Failed To Comply With Industry Standards***

69. Cybersecurity experts consistently recognize healthcare providers as particularly vulnerable to cyberattacks, primarily due to the valuable nature of the Private Information they handle.

70. Certain identified best practices should minimally be implemented by healthcare providers like the Defendants. These practices include but are not limited to, educating all employees, enforcing strong passwords, applying multi-layer security measures (including firewalls, anti-virus, and anti-malware software), implementing encryption to render data unreadable without proper authorization, utilizing multi-factor authentication, regularly backing up data, and restricting employee access to sensitive data.

71. Additional standard cybersecurity best practices within the healthcare industry encompass installing appropriate malware detection software, monitoring and limiting network ports, securing web browsers and email systems, configuring network infrastructure (like firewalls, switches, and routers), safeguarding physical security systems, and training staff on key cybersecurity aspects.

72. On information and belief, Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS Controls), which are all established standards in reasonable cybersecurity readiness.

73. Given these frameworks represent the current and applicable industry standards, Defendants' failure to comply with at least one or all of these accepted standards significantly contributed to the occurrence of the Data Breach. Their non-compliance created vulnerabilities that the threat actor exploited, leading to the compromise of sensitive patient data.

*Large Companies are Regularly Targeted by Cybercriminals*

74.     Defendants were or should have been, fully aware of the unique type and the significant volume of data on their network, comprising millions of individuals' detailed and confidential personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

75.     Data thieves regularly target companies like Defendants due to the large volumes of Private Information that they come into possession of.

76.     As custodians of Plaintiff and Class Member's Private Information, Defendants knew or should have known the importance of protecting its Private Information, and of the foreseeable consequences if any data breaches occurred.

77.     Defendants' security obligations were especially important due to the substantial up-tick of cyber-attacks and data breaches occurring in recent years.

78.     Furthermore, Defendant should have been vigilant in protecting its data as companies such as Defendants are especially targeted for cyber-attacks – especially as Defendants warned of Data Breaches in the healthcare industry.

79.     In the wake of the massive Change Healthcare Data Breach, Cognizant attempted to capitalize on its competitor's weakness to advertise how its systems were superior to Change Heathcare's. Specifically, Cognizant published a blogpost which stated "while it's unknown exactly how Blackcat first accessed Change Healthcare's network, access control is a major issue in healthcare, where so many parties require access to one another's data. "There's so much third-party interaction going on," . . . "The first thing we tell clients is that you need to know who has access to your apps."[12]

80.     It has been reported that the Data Breach in controversy here was due to an "unauthorized actor accessing records linked to insurance eligibility verification transactions."[13]

---

[12] *Supra*, see note 2.
[13] *Supra*, see note 1.

16

*Common Injuries and Damages to Plaintiff and Class Members*

81. Although it is believed that Defendants have offered identity monitoring services for a limited time, the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the highly sensitive nature of the Private Information at issue here.

82. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures to protect the Private Information of their current and former customers.

83. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

84. Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans opened in their names, tax return fraud, utility bills opened in their names, and other identity theft.

85. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

86. Plaintiff and Class Members are also incurring and may continue incurring out-of-pocket costs for protective measures such as credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendants), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by the cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

88. Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses

17

and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing 'freezes' and 'alerts' with credit reporting agencies;

d. Spending time with financial institution or government agencies to dispute fraudulent charges and/or claims;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring Social Security number, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

89. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

90. Further, as a result of Defendants' conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

91. As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and are at a substantial and present risk of harm.

## IV.   CLASS ACTION ALLEGATIONS

92.   Plaintiff brings this action as a class action pursuant to Rule 23 *et seq.* of the Federal Rules of Civil Procedure on behalf of the Class.

93.   Plaintiff proposes the following Class Definition:

**All individuals residing in the United States whose Private Information was compromised in the Data Breach.**

94.   Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, members, affiliates, officers and directors, and any entity in which a Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

95.   Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

96.   The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

97.   Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These questions include but are not limited to:

a.   Whether Defendants failed to adequately safeguard the Private Information of Plaintiff and Class Members;

b.   Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiff and Class Members;

c.   Whether Defendants had a duty not to use the Private Information of Plaintiff and Class Members for non-business purposes;

19

d. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

f. Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g. Whether Defendants violated any statutes as alleged herein;

h. Whether Defendants engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the Private Information of Plaintiff and Class Members;

i. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

98. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

99. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members. No Plaintiff has a disabling conflict of interest with any other Member of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class, and the infringement of rights and the damages they have suffered are typical of other Class Members. Plaintiff also has retained counsel experienced in complex class action litigation, and they intend to prosecute this action vigorously.

100. As provided under Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly, and Plaintiff challenges these policies by reference to Defendants' conduct with respect to the Class as a whole.

101. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

102. Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. Among other things, it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against large corporations such as Defendants. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

103. Particular issues, such as questions related to Defendants' liability, are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common issues would materially advance the resolution of this matter and the parties' interests therein.

104. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Prosecution of separate actions by Class

Members also would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class Against Defendants)**

105.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

106.    Plaintiff brings this claim on behalf of the Class.

107.    As a condition of using the service of Defendants or its partners or affiliates, Plaintiff and the Class were required to provide and entrust Defendants with certain Private Information, including their name, birthdate, address, loan number, Social Security number, and other information.

108.    Plaintiff and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

109.    By undertaking the duty to maintain and secure this data, sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their systems and networks—and Plaintiff and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from cyber theft.

110.    Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed or obtained by unauthorized parties.

111.    Defendants knew or reasonably should have known that its failure to exercise due care in the collecting, storing, and using of consumers' Private Information involved an

22

unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

112.     Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiff and Class Members' information in their possession was adequately secured and protected.

113.     Defendants also had a duty to exercise appropriate practices to remove former customers' Private Information that they were no longer required to retain pursuant to regulations.

114.     Defendants had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff and the Class's Private Information, and to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

115.     Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential Private Information, a mandatory step in receiving services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendants' Privacy Policies, as well as applicable laws and regulations. Specifically, Defendants actively solicited and gathered Private Information as part of their business and was solely responsible for and in the position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class members from a resulting data breach.

116.     Defendants were subject to an independent duty, untethered to any contract between Defendants and Plaintiff and the Class, to maintain adequate data security.

117.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

23

118. Defendants also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of adequately safeguarding that Private Information, and the necessity of encrypting Private Information stored on Defendants' systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

119. Defendants' conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendants' wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decision not to comply with industry standards for the safekeeping of Plaintiff and the Class's Private Information, including basic encryption techniques available to Defendants.

120. Plaintiff and the Class had and have no ability to protect their Private Information that was in, and remains in, Defendants' possession.

121. Defendants were in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

122. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendants' possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

123. Defendants have admitted that the Private Information of Plaintiff and the Class was wrongfully accessed by unauthorized third persons as a result of the Data Breach.

124. Defendants, through their actions and inaction, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in

24

protecting and safeguarding the Private Information of Plaintiff and the Class when the Private Information was within Defendants' possession or control.

125. Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

126. Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' Private Information in the face of increased risk of theft.

127. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former customers' Private Information.

128. Defendants, by their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

129. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

130. There is a close causal connection between (a) Defendants' failure to implement security measures to protect the Private Information of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff and the Class's Private Information was accessed and exfiltrated as the direct and proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

131. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendants, of failing to implement reasonable measures to protect Private Information. The FTC Act and related authorities form part of the basis of Defendants' duty in this regard.

132. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and the Class.

133. Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

134. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

135. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

136. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the current and former customers' Private Information in their continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of Private

Information as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

137. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

138. Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

139. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

140. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class Against Defendants)

141. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

142. Plaintiff brings this claim on behalf of the Class.

143. Defendants acquired and maintained the Private Information of Plaintiff and the Class, including names, addresses, dates of birth, social security numbers, insurance details and provider information.

144. At the time Defendants acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the Private Information and not take unjustified risks when storing the Private Information.

145. Plaintiff and the Class would not have entrusted their Private Information to Defendants had they known that Defendants would not properly secure the Private Information, and not delete the Private Information that Defendants no longer had a reasonable need to maintain.

146. Defendants further implicitly promised to comply with industry standards and to ensure that Plaintiff and the Class Members' Private Information would remain protected.

147. Implicit in the agreements between Plaintiff and the Class and Defendant to provide Private Information, was the latter's obligation to:

    a.    Use such Private Information for business purposes only;

    b.    Take reasonable steps to safeguard the Private Information;

    c.    Prevent unauthorized disclosures of the Private Information;

    d.    Provide Plaintiff and the Class with prompt and sufficient notice of any and all unauthorized disclosure or uses; and

    e.    Retain the Private Information only under conditions that kept such information secure and confidential.

148. In collecting and maintaining the Private Information of Plaintiff and the Class and publishing its privacy policies, Defendants entered into implied contracts with Plaintiff and the Class requiring Defendants to protect and keep secure the Private Information of Plaintiff and the Class.

149. Plaintiff and the Class fully performed their obligations as required with Defendants.

150. Defendants breached the implied contract it made with Plaintiff and the Class by failing to protect and keep private the financial information of Plaintiff and the Class, including failing to;

    a.    Encrypt or tokenize the sensitive Private Information of Plaintiff and the Class;

28

b. Delete such Private Information that Defendant no longer had reason to maintain;

c. Eliminate the potential accessibility of the Private Information where such accessibility was not justified; and

d. Otherwise review and improve the security of the network system that contained such Private Information.

151. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

152. As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class are at an increased risk of identity theft or fraud.

153. As a direct and proximate result of Defendants' breach of implied contracts, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## COUNT III
### BREACH OF FIDUCIARY DUTY
#### (On Behalf of Plaintiff and the Class Against Defendants)

154. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

155. Plaintiff brings this claim on behalf of the Class.

29

156.    A relationship existed between Defendants and Plaintiff and the Class in which Plaintiff and the Class put their trust in Defendants to protect the Private Information of Plaintiff and the Class and Defendants accepted that trust.

157.    Defendants breached the fiduciary duty that they owed to Plaintiff and the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and the Class.

158.    Defendants' breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class.

159.    But for Defendants' breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred.

160.    Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class.

161.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against Defendants)**

162.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

163.    Defendants required Plaintiff and Class Members to provide their Private Information in order to engage in business.

164.    Plaintiff and Class Members conferred a monetary benefit on Defendants by providing their Private Information.

165.    Defendants did not secure Plaintiff's and the Class Members' Private Information, and therefore, did not fairly compensate Plaintiff or the Class Members for the value of their Private Information.

30

166.     Had Plaintiff and the Class Members known that Defendants would not adequately protect their Private Information, they would not have agreed to entrust it to Defendants.

167.     Under the circumstances, Defendants would be unjustly enriched by being permitted to retain any of the benefits that Plaintiff and the Class conferred onto it.

168.     Plaintiff and the Class have sustained injuries as a result of Defendants' conduct, and Plaintiff and the Class are without an adequate remedy.

169.     Plaintiff and the Class are entitled to restitution from Defendants and a disgorgement of profits, benefits and other compensation received by Defendants as a result of their wrongful conduct.

**COUNT V**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class Against Defendants)**

170.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

171.     Plaintiff brings this claim on behalf of the Class.

172.     The Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq*., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes as applicable here.

173.     Defendants owe duties of care to Plaintiff and Class Members, which require Defendants to adequately secure Plaintiff and the Class Member's Private Information.

174.     Due to the Data Breach, Plaintiff and the Class Member's Private Information have been unnecessarily put at risk.

175.     An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard Plaintiff and the Class Members' Private Information and whether Defendants are currently

31

maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information.

176. Accordingly, Plaintiff and the Class request this Court under the Declaratory Judgment Act to enter a judgment declaring the following:

a. Defendants owe a legal duty to secure the Private Information of their former and current customers of Defendant;

b. Defendants have breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c. Defendants continue to breach its legal duty by failing to employ reasonable means to secure the Private Information of Defendants' former and current customers.

d. Defendants' ongoing breaches of said duty continue to cause Plaintiff and the Class harm.

177. Plaintiff and the Class, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumers' Private Information, and (2) to comply with their duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training their security personnel regarding any new or modified procedures;

     d.     Segmenting user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

     e.     Conducting regular database scanning and security checks;

     f.     Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

     g.     Purchasing credit monitoring services for Plaintiff and Class Members for their respective lifetimes; and

     h.     Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

178.    The Court should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff and Class Members' Private Information.

179.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendants' systems or networks. The risk of another breach is real, immediate, and substantial.

180.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. If another data breach occurs, Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein. But, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is minimal given it has pre-existing legal obligations to employ these measures.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of and all Class Members, requests judgment against Defendants and that the Court grant the following:

a. An Order certifying the Class, as defined herein, and appointing Plaintiff and their counsel to represent the Class;

b. Equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and the Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class Members;

c. Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i. Prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii. Requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii. Requiring Defendants to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff and Class Members' respective lifetimes;

    iv. Requiring Defendants to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

v. Requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

vi. Prohibiting Defendants from maintaining Plaintiff and Class Members personally identifying information on a cloud-based database;

vii. Requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by third-party security auditors;

viii. Requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. Requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

x. Requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other areas of Defendants' systems;

xi. Requiring Defendants to conduct regular database scanning and securing checks;

xii. Requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

35

xiii. Requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. Requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personally identifying information;

xv. Requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. Requiring Defendants to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii. Requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

d. For an award of damages, including actual, statutory, consequential, punitive, and nominal damages, as allowed by law in an amount to be determined;

36

e.      For an award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

f.      For prejudgment interest on all amounts awarded; and

g.      Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 13, 2026                        **BARRACK, RODOS & BACINE**

*/s/ Andrew J. Heo*
Andrew J. Heo (NJ Bar # 326289)
Jeffrey W. Golan*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: 215-963-0600
aheo@barrack.com
jgolan@barrack.com

*Attorneys for Plaintiff and the Proposed Class*

*\*pro hac vice application forthcoming*

CIVIL

# U.S. District Court
## Eastern District of California - Live System (Sacramento)
### CIVIL DOCKET FOR CASE #: 2:26-cv-01314-SCR

Carucci v. Cares Community Health
Assigned to: Magistrate Judge Sean C. Riordan
Case in other court: Sacramento County Superior Court, 26cv001036
Cause: 28:1441 Petition for Removal

Date Filed: 04/03/2026
Jury Demand: Plaintiff
Nature of Suit: 362 Personal Inj. Med. Malpractice
Jurisdiction: Federal Question

**Plaintiff**

**Scott Carucci**                                     represented by **Chris Frost**
Frost LLP
Litigation
10960 Wilshire Blvd
Suite 2100
Los Angeles, CA 90024
424-254-0441
Email: chris@frostllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Cares Community Health**                            represented by **Kathryn Ellen Doi**
*Doing business as*                                   Feldesman LLP
One Community Health                                  400 Capitol Mall
Suite 2500
Sacramento, CA 95814
916-425-3477
Email: kdoi@feldesman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/03/2026 | 1 | NOTICE of REMOVAL from Sacramento County Superior Court of California , case number 26cv001036 by Cares Community Health. (Filing fee $ 405, receipt number ACAEDC-13134940) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Civil Cover Sheet)(Doi, Kathryn) (Entered: 04/03/2026) |
| 04/03/2026 | 2 | CIVIL NEW CASE DOCUMENTS AND NOTICE OF ASSIGNMENT TO A U.S. MAGISTRATE JUDGE AND DECLINATION OF CONSENT FORM ISSUED. The Declination of Consent form is due within *14* days of receipt or service of the Notice of Assignment. (Attachments: # 1 Notice of Direct Assignment to MJ, # 2 VDRP) (Deputy Clerk VLK) (Entered: 04/03/2026) |
| 04/15/2026 | 3 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Cares Community Health for attorney Brendan M. Tyler to appear Pro Hac Vice. (Filing fee $ 300, receipt number ACAEDC-13185892) (Attachments: # 1 Declaration) (Doi, Kathryn) (Entered: 04/15/2026) |
| 04/15/2026 | 4 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Cares Community Health for attorney Mindy B. Pava to appear Pro Hac Vice. (Filing fee $ 300, receipt number ACAEDC-13185957) (Attachments: # 1 Declaration) (Doi, Kathryn) (Entered: 04/15/2026) |

Case MDL No. 3185    Document 65-3    Filed 04/17/26    Page 81 of 145

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/15/2026 15:59:02 | | | |
| **PACER Login:** | CCMS0034 | **Client Code:** | Cognizant |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-01314-SCR |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

Christopher Frost (SBN 200336)
chris@frostllp.com
Kevin S. Dicker (SBN 179315)
kevin@frostllp.com
**FROST LLP**
10960 Wilshire Blvd., Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Jessica A. Wilkes (*Pro Hac Vice Forthcoming)*
jaw@federmanlaw.com
Jonathan Herrera *(Pro Hac Vice Forthcoming*)
jjh@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560

Attorneys for SCOTT CARUCCI

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
01/15/2026
By: _____V. Bloxson_____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| SCOTT CARUCCI, on behalf of himself and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CARES COMMUNITY HEALTH D/B/A ONE COMMUNITY HEALTH,<br><br>　　　　Defendant. | Case No. 26CV001036<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT**

Plaintiff Scott Carucci ("Plaintiff"), individually and on behalf of himself and all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through his undersigned counsel, files this Class Action Complaint against Defendant Cares Community Health d/b/a One Community Health ("OCH" or "Defendant"). Plaintiff alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of his counsel as to all other matters.

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action lawsuit against OCH for its negligent failure to protect and safeguard Plaintiff's and Class Members' highly sensitive personally identifiable information ("PII") and protected health information ("PHI") (together, "Private Information"), culminating in a massive and preventable data breach (the "Data Breach" or "Breach"). As a result of Defendant's negligence and deficient data security practices, Plaintiff and the Class will face an imminent risk of identity theft and fraud for the rest of their lives.

2.      One Community Health, based in Sacramento, California provides a number of medical services, including primary care, dental, pediatric, laboratory services, and others.[1] OCH required Plaintiff and Class Members to provide it with their PII and PHI in order to receive medical services. After gathering Plaintiff's and the Class's Private Information, OCH became directly responsible for ensuring that OCH, or any party hired by OCH, provided, and maintained adequate data security practices, procedures, protocols, and

---

[1] https://onecommunityhealth.com/services/ (last visited Dec. 24, 2025).

infrastructure. OCH also became directly responsible for ensuring Plaintiff's and Class Members' Private Information was protected and stored where unauthorized third parties could not gain unauthorized access.

3.    OCH hired TriZetto Provider Solutions ("TriZetto") to provide records management services in relation to OCH's medical services with its patients. Through this relationship, TriZetto collected and maintained and/or was given access to the PII and PHI of Plaintiff and the Class.

4.    OCH was negligent and/or failed to confirm when hiring TriZetto that Plaintiff's and Class Members' Private Information would be protected from unauthorized access, that TriZetto maintained adequate data security, procedures, practices, infrastructure, and protocols, and that Plaintiff's and the Class's Private Information would not be exposed to data breaches.

5.    TriZetto is a healthcare technology firm that provides management services, including care management, patient engagement, and analytics to numerous healthcare providers in the U.S. including OCH.[2] TriZetto claims that it aims to create a patient-focused environment that is interconnected, streamlined and efficient.[3]

6.    On or around November 2024, an unauthorized third party accessed TriZetto's network systems and accessed protected Private Information.[4]

---

[2] TriZetto Provider Solutions, *Who We Are*, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025);

[3] https://www.trizettoprovider.com/who-we-serve/physician-practices (last visited Dec. 18, 2025).

[4] Steve Adler, *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data*

CLASS ACTION COMPLAINT

7. On or around October 2, 2025, TriZetto identified that unauthorized third parties infiltrated TriZetto's network systems which resulted in the access of protected Private Information—almost a year after the Breach occurred.[5]

8. Upon information and belief, the stolen information included one or more of the following: patient names, addresses, dates of birth, Social Security number, health insurance information, health insurance member number, information about the primary insured or beneficiary, and other demographic and health information.[6]

9. To date, there is no indication that Defendant has notified affected individuals of the Data Breach.

10. Due to OCH's negligent and/or careless acts and omissions, and due to its utter failure to protect Class Members' sensitive data, Plaintiff's and Class Members' unencrypted, unredacted Private Information was compromised. Hackers obtained Plaintiff's and the Class's Private Information because of its value in exploiting and stealing their identities. The risks to Plaintiff and the Class will remain for their respective lifetimes.

11. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

---

*Breach*, THE HIPPA JOURNAL (Dec. 11, 2025), http://www.hipaajournal.com/trizetto-providersolutions-data-breach/.

[5] *Id.*

[6] *Id.*

CLASS ACTION COMPLAINT

12.     Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft will have to spend time responding to the Data Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

13.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

14.     Plaintiff brings this action individually and on behalf of all persons whose Private Information was compromised due to OCH's failure to: (i) ensure TriZetto adequately protected Plaintiff's and Class Members' Private Information; (ii) select a management service provider with adequate data security, procedures, practices, infrastructure, and protocols; (iii) investigate TriZetto's data security measures prior to hiring TriZetto to ensure they were adequate; (v) advise TriZetto of its duties under FTC and HIPAA (described below); (vi) warn Plaintiff and Class Members of TriZetto's inadequate information security practices; and (viii) give timely notice of the Data Breach to Plaintiff and the Class.

15.     The negligence of OCH violates federal and state statutes, regulations, and security procedures and guidelines.

16.     As a result of Defendant's actions and/or inactions described herein, Plaintiff and Class Members have suffered injuries. The injuries they have suffered include: (i) diminished or lost value of their Private Information; (ii) out-of-pocket expenses associated

5

CLASS ACTION COMPLAINT

with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use, of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual, consequences of the Data Breach, including but not limited to lost time; (iv) the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges, including but not limited to change their usernames and passwords on their accounts, investigate, correct and resolve unauthorized transactions; and (v) the continued and certainly an increased risk to their Private Information, which remains in OCH's and TriZetto's possession and is subject to further unauthorized disclosures so long as OCH and TriZetto fail to undertake appropriate and adequate measures to protect their Private Information. These risks will remain for the lifetimes of Plaintiff and Class Members.

### The Parties

17.     Plaintiff **Scott Carucci** is an individual domiciled in Rancho Cordova, California. Plaintiff Carucci is a patient of One Community Health. Upon information and belief, Plaintiff Carucci's Private Information was compromised in TriZetto's Breach and is therefore a victim of the Breach.

18.     Defendant **Cares Community Health d/b/a One Community Health** is a non-profit corporation in California with its principal place of business located at 1500 21st St. Sacramento, CA 95811. OCH's registered agent for service is Michelle Monroe with a registered address at 1500 21st St. Sacramento, CA 95811. Upon information and belief, OCH provided its patients Private Information to TriZetto.

### Jurisdiction and Venue

19.     This Court has subject matter jurisdiction over this action under Cal. Civ. Proc. Code § 395.

CLASS ACTION COMPLAINT

20.    This Court has personal jurisdiction over Defendant because it is incorporated under California law, its principal place of business is in California, and the acts and omissions giving rise to Plaintiff's claims occurred in this State.

21.    Venue is proper in Sacramento County because Defendant's actions and/or omissions giving rise to this action were conducted in this county and because Defendant's principal place of business is in this county.

## FACTUAL ALLEGATIONS

**Defendant Collected Plaintiff's and Class Members' Private Information.**

22.    OCH acquired, collected, and stored Plaintiff's and Class Members' PII and PHI. By virtue of OCH's relationship with TriZetto, TriZetto also acquired, collected, and stored Plaintiff's and Class Members' PII and PHI through the management services it provided to OCH.

23.    Plaintiff provided his Private Information to OCH in connection with healthcare services.

24.    OCH hired TriZetto as a third-party vendor which collects, stores, and manages OCH's patients' Private Information.

25.    As a condition of doing business, Defendant OCH requires that its patients entrust it with highly sensitive personal and health information. In the ordinary course of receiving management service from TriZetto, OCH provided Plaintiff's and Class Members' Private Information to TriZetto.

26.    The information held by Defendant and TriZetto at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

27.    Upon information and belief, OCH made promises and representations to

CLASS ACTION COMPLAINT

individuals that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it, including through its privacy policies.

28.    Plaintiff and Class Members provided their Private Information to OCH, with the reasonable expectation and on the mutual understanding that OCH would comply with its obligations to keep such information confidential and secure from unauthorized access.

29.    TriZetto could have prevented this Data Breach by properly securing and encrypting Plaintiff's and Class Members' Private Information. Similarly, OCH could have prevented the Data Breach by ensuring TriZetto properly secured and encrypted Plaintiff's and Class Members' Private Information.

30.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties. Moreover, Defendant had a duty to ensure that its third-party vendor, TriZetto, implemented adequate cyber security safeguards to protect Plaintiff's and Class Members' Private Information from involuntary disclosure to unauthorized parties. Defendant has a legal duty to keep Plaintiff's and Class Members' Private Information safe and confidential.

31.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and

CLASS ACTION COMPLAINT

knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

32.    Defendant had obligations under the FTC Act and HIPAA, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

33.    TriZetto had a duty to design, maintain, and test its computer systems and networks to ensure that the Private Information in its possession was adequately secured and protected. Moreover, OCH owed a duty to Plaintiff and the Class to ensure TriZetto designed, maintained, and tested its computer systems and networks to ensure that the Private Information in TriZetto's possession would be adequately secured and protected.

34.    OCH owed a duty to Plaintiff and the Class to ensure TriZetto created and implemented reasonable data security practices and procedures to protect the Private Information in its possession.

35.    OCH owed a duty to Plaintiff and the Class to ensure TriZetto implemented processes that would detect a breach on its data security systems in a timely manner.

36.    OCH owed a duty to Plaintiff and the Class to ensure TriZetto acted upon data security warnings and alerts in a timely fashion.

37.    OCH owed a duty to Plaintiff and the Class to disclose if TriZetto's computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private Information with OCH and/or TriZetto.

CLASS ACTION COMPLAINT

38.    OCH owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

39.    OCH owed a duty to Plaintiff and the Class to ensure TriZetto encrypted Plaintiff's and Class Members' PII and PHI and to ensure TriZetto monitored user behavior and activity in order to identify possible threats.

40.    As a direct and/or proximate result of OCH's wrongful actions and/or inaction and the resulting Data Breach, the criminal(s) and/or the criminal's customers now have Plaintiff's and the other Class Members' Private Information.

41.    OCH derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not provide its services.

42.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

**The Data Breach**

43.    On or around November 2024, unidentified third parties infiltrated TriZetto's network systems which resulted in the access of protected Private Information of Plaintiff and Class Members.[7]

---

[7] Steve Adler, *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPPA JOURNAL (Dec. 11, 2025), http://www.hipaajournal.com/trizetto-providersolutions-data-breach/ (last visited Dec. 18, 2025).

CLASS ACTION COMPLAINT

44.    TriZetto identified the unauthorized access of its network systems on October 2, 2025, almost a year after the Breach occurred.[8]

45.    Upon information and belief, the stolen information included one or more of the following: patient names, addresses, dates of birth, Social Security number, health insurance information, health insurance member number, information about the primary insured or beneficiary, and other demographic and health information.[9]

46.    OCH failed to use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information TriZetto was maintaining for Plaintiff and Class Members, causing the devastating exposure of their Private Information.

47.    The cybercriminals accessed and acquired files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed and stolen in the Breach.

48.    Losing these types of medical records poses a significant risk to the individuals involved. Most obviously, attackers can attempt to use names, addresses, and other data points for identity theft by setting up fraudulent accounts.

49.    Plaintiff further believes his Private Information, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

50.    Upon information and belief, Defendant has not yet notified affected individuals of the Breach.

---

[8] *Id.*

[9] *Id.*

CLASS ACTION COMPLAINT

51.     Defendant's actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

52.     As such, Plaintiff and the Class continue to be at an imminent and impending risk of identity theft and fraud.

**Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud them.**

53.     The type of data that was accessed and compromised here (including full names, Social Security numbers, and medical information) can easily be used to perpetrate fraud and identity theft. Social Security numbers are widely regarded as the most sensitive information hackers can access due to their durability.

54.     Social Security numbers are the "gold standard" for identity theft.

55.     Private Information is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

56.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[10]

57.     For example, with the Private Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, obtain medical services, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented

---

[10] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited April 11, 2024).

CLASS ACTION COMPLAINT

immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[11]

58.    These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

59.    Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013[,]" which is more than identity thefts involving banking and finance, the government and the military, or education.[12]

60.    "Medical records are a gold mine for criminals—they can access a customer's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[13] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[14]

---

[11] *See, e.g.*, Nikkita Walker, *What Can You Do With Your Social Security Number*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[12] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER HEALTH NEWS (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/.

[13] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX (May 14, 2015) https://www.idx.us/knowledge-center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat..

[14] *Managing cyber risks in an interconnected world: Key findings from The Global State of Information Security Survey 2015*, PRICEWATERHOUSECOOPERS (Sept. 30, 2014), https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

61.    When cybercriminals manage to steal health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Plaintiff and Class Members are exposed.

62.    Social Security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[15]

(Emphasis added).

63.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[16]

64.    The Data Breach at issue here was targeted and financially motivated, as the only reason cybercriminals go through the trouble of hacking entities like Defendant's vendor, TriZetto, is to steal the highly sensitive information they maintain, which can be exploited and sold for use in the kinds of criminal activity described herein.

---

[15] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[16] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737.

CLASS ACTION COMPLAINT

65.    A Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[17]

66.    PHI is even more valuable on the black market than PII.[18]

67.    According to the Center for Internet Security, "[t]he average cost of a data breach incurred by a non-healthcare related agency, per stolen record, is $158. For healthcare agencies the cost is an average of $355. Credit card information and PII sell for $1-$2 on the black market, but PHI can sell for as much as $363 according to the Infosec Institute. This is because one's personal health history, including ailments, illnesses, surgeries, etc., can't be changed, unlike credit card information or Social Security Numbers."[19]

68.    "PHI is valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale."[20]

---

[17] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, PGMAG (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[18] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited April 11, 2024).

[19] *Id.*

[20] *Id.*

CLASS ACTION COMPLAINT

69.    Identity theft experts advise victims of data breaches: "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[21]

70.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, **they will use it**.[22]

71.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

72.    For instance, with a stolen Social Security number, which is part of the Private Information compromised in the Data Breach, criminals can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[24]

---

[21] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[22] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[23] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737 (emphasis added).

[24] *See* Nikkita Walker, *What Can Someone Do with Your Social Security Number?*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

CLASS ACTION COMPLAINT

73.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[25]

74.    The unfortunate truth is the full scope of the harm has yet to be realized. There may be a time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is used.

75.    Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendant's negligence.

76.    Furthermore, identity monitoring services only alert someone to the fact that they have already been the victim of identity theft—it does not prevent identity theft.[26]

77.    Nor can an identity monitoring service remove personal information from the dark web.[27]

78.    "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[28]

---

[25] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

[26] *See* Kayleigh Kulp, *Credit monitoring services may not be worth the cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[27] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[28] *Id.*

79.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and placed at an imminent and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and medical records for unauthorized activity for years to come.

80.     Even more serious is the identity restoration that Plaintiff and other Class Members must go through, which can require spending countless hours filing police reports, filling out IRS forms, completing Federal Trade Commission checklists and Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

81.     Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

    a.  Actual identity theft;

    b.  Trespass, damage to, and theft of their personal property, including their Private Information;

    c.  Improper disclosure and theft of their Private Information;

    d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

CLASS ACTION COMPLAINT

e. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information;

f. Ascertainable losses in the form of time taken to respond to identity theft, including lost opportunities and lost wages from uncompensated time off from work;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of diminution of the value of Plaintiff's and Class Members' Private Information, for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and/or

k. Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

82. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant and TriZetto, is protected from further breaches through the implementation of industry standard security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiff's and Class Members' Private Information.

CLASS ACTION COMPLAINT

83.    Plaintiff and Class Members also have an interest in ensuring that their Private Information is removed from all of Defendant's and its vendor's, servers, systems, and files.

84.    Plaintiff and Class Members are desperately trying to mitigate the damages Defendant caused them.

85.    Given the kind of Private Information that was made accessible to hackers, however, Plaintiff is certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[29]

86.    None of this should have happened because the Data Breach was entirely preventable.

**OCH was Aware of the Risk of Cyberattacks.**

87.    According to the Center for Internet Security, "the health industry experiences more data breaches than any other sector."[30] This is because "Personal Health Information (PHI) is more valuable on the black market than credit card credentials or regular Personally Identifiable Information (PII). Therefore, there is a higher incentive for cyber criminals to

---

[29] *What happens if I change my Social Security number?*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[30] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited April 11, 2024).

CLASS ACTION COMPLAINT

target medical databases. They can sell the PHI and/or use it for their own personal gain."[31]

88.    "In 2023, more than 540 organizations and 112 million individuals were implicated in healthcare data breaches reported to the HHS Office for Civil Rights (OCR), compared to 590 organizations and 48.6 million impacted individuals in 2022."[32]

89.    "The number of cybersecurity attacks disrupting the healthcare sector has continued to be a growing concern. In the last three years, more than 90% of all healthcare organizations have reported at least one security breach which can manifest in denial of service, malicious code, ransomed data, and more."[33]

90.    "Healthcare organi[z]ations are rich targets for cybercriminals because they hold a large amount of sensitive patient data. This data can be used to commit identity theft or fraud or sold on the black market. Hackers can access this data in many ways, including phishing emails, malware, and unsecured networks."[34]

91.    It is no secret that "[h]ealthcare data breaches are reaching record highs. Indeed, healthcare now sees more cyberattacks than any other industry. Fully one-third of all cyberattacks are aimed at healthcare institutions. Why? Because healthcare is a valuable and vulnerable target. Hospitals and healthcare institutions are a prime target for cybercrime

---

[31] *Id.*

[32] *This Year's Largest Healthcare Data Breaches*, HEALTH IT SECURITY (Dec. 26, 2023), https://healthitsecurity.com/features/this-years-largest-healthcare-data-breaches.

[33] *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.

[34] Troy Beamer, *What Industries Are Most Vulnerable to Cyber Attacks In 2024?*, TECHNEWS (Feb. 27, 2024), https://www.techbusinessnews.com.au/what-industries-are-most-vulnerable-to-cyberattacks-in-2022/.

due to the vast amount of sensitive data they hold."[35]

92.    The health industry is frequently recognized as one of the most vulnerable industries for a cyberattack.[36]

93.    OCH should have been aware, and indeed was aware, that TriZetto was at risk of a data breach that could expose the Private Information that OCH provided to TriZetto, especially given the rise of healthcare data breaches. However, OCH failed to inquire into TriZetto's cybersecurity safeguards to ensure that TriZetto implemented and complied with FTC and HIPAA regulations and guidelines.

94.    OCH's assurances to its patients that it maintains high standards of cybersecurity are further evidence that OCH recognized it had a duty to use reasonable measures to protect the Private Information that it solicited, collected, and maintained.

95.    OCH was aware of the risks and harm that could result from TriZetto's inadequate data security.

**OCH Failed to Comply with Federal Trade Commission Requirements.**

96.    Federal and State governments have established security standards and issued recommendations to minimize data breaches and the resulting harm to individuals and

---

[35] *What Industries Are Most Vulnerable to Cyberattacks?*, PSM, https://www.psmpartners.com/blog/most-targeted-industries-for-cyber-attacks/

[36] *See, e.g.*, *id.*; Liudmyla Pryimenko, *The 7 Industries Most Vulnerable to Cyberattacks*, EKRAN (Mar. 25, 2024), https://www.ekransystem.com/en/blog/5-industries-most-risk-of-data-breaches; Ani Petrosyan, *Distribution of cyberattacks across worldwide industries in 2023*, STATISTA (Mar. 22, 2024), https://www.statista.com/statistics/1315805/cyber-attacks-top-industries-worldwide/; *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.

financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[37]

97.    Data breaches are preventable.[38] "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[39] "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[40]

98.    Most reported data breaches "are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[41]

99.    Here, many failures laid the groundwork for the Data Breach.

---

[37] *See Start with Security: A Guide for Business*, FEDERAL TRADE COMMISSION, (June 2015), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[38] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.

[39] *Id.* at 17.

[40] *Id.* at 28.

[41] *Id.*

23

CLASS ACTION COMPLAINT

100.    The FTC has published guidelines that establish reasonable data security practices for businesses.[42]

101.    The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[43]

102.    The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.[44]

103.    The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[45]

104.    OCH failed to ensure that TriZetto followed reasonable and necessary industry standards to prevent the Data Breach, including the FTC's guidelines.

---

[42] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

[43] *Id.*
[44] *Id.*

[45] *Id.*

24

CLASS ACTION COMPLAINT

105.    OCH also failed to ensure that TriZetto met the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in cybersecurity readiness.

106.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[46]

107.    To prevent and detect the attack here, OCH should have ensured that TriZetto complied with the following measures as recommended by the Federal Bureau of Investigation:

- Implemented an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enabled strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scanned all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

---

[46] *See How to Protect Your Networks from RANSOMWARE*, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

CLASS ACTION COMPLAINT

- Configured firewalls to block access to known malicious IP addresses.

- Patched operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Managed the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configured access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disabled macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implemented Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

26
CLASS ACTION COMPLAINT

- Considered disabling Remote Desktop protocol (RDP) if it is not being used.

- Used application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Executed operating system environments or specific programs in a virtualized environment.

- Categorized data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[47]

108.    According to information and belief, Defendant TriZetto failed to do any of the above and OCH failed to ensure that TriZetto complied with cybersecurity industry standards.

109.    To prevent and detect ransomware attacks, upon information and belief, Defendant failed to ensure TriZetto recommended its employees, as recommended by the United States Cybersecurity & Infrastructure Security Agency, take the following measures:

- **Updated and patched your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

- **Used caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears

---

[47] *Id.* at 3–4.

CLASS ACTION COMPLAINT

to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

- **Opened email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Kept your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it.

- **Verified email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications,

28

CLASS ACTION COMPLAINT

which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Used and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[48]

110.    In addition, to prevent and detect the Data Breach, OCH should have ensured that TriZetto implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Harden internet-facing assets**

    -    Apply latest security updates

    -    Use threat and vulnerability management

    -    Perform regular audits

- **Thoroughly investigate and remediate alerts.**

    -    Prioritize and treat commodity malware infections as potential full compromise of the system

- **Include IT professionals in security discussions.**

    -    Ensure collaboration among security operations, security administrators, and information technology administrators to configure servers and other endpoints securely

- **Build and maintain credential hygiene**

---

[48] *See Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (revised Sept. 2, 2021), https://www.cisa.gov/news-events/news/protecting-against-ransomware (internal citations omitted).

CLASS ACTION COMPLAINT

- Use multifactor authentication or network level authentication and enforce strong, randomized, just-in-time local administrator passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

  - Monitor for cleanup of Event Logs

  - Analyze logon events

- **Harden infrastructure**

  - Utilize Windows Defender Firewall

  - Enable tamper protection

  - Enable cloud-delivered protection

  - Turn on attack surface reduction rules and Antimalware Scan Interface for Office Visual Basic for Applications[49]

111.    Given that TriZetto was storing the Private Information of OCH's patients, including Plaintiff and Class Members, TriZetto could and should have implemented all of the above measures to prevent and detect cyberattacks and OCH owed a duty to Plaintiff and Class Members to ensure that TriZetto did so.

---

[49] *See Human-operated ransomware attacks: A preventable disaster*, MICROSOFT THREAT INTELLIGENCE (Mar 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

CLASS ACTION COMPLAINT

112.    Specifically, among other failures, OCH and TriZetto had far too much confidential unencrypted information held on their systems. Such Private Information should have been segregated into an encrypted system.[50]

113.    Moreover, it is well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed.[51]

114.    The FTC has repeatedly emphasized the importance of disposing of unnecessary Private Information: "Keep sensitive data in your system only as long as you have a business reason to have it. Once that business need is over, properly dispose of it. If it's not on your system, it can't be stolen by hackers."[52] Rather than following this basic standard of care, TriZetto kept OCH patients' unencrypted Private Information on its inadequately secured systems indefinitely.

115.    In sum, the Data Breach could have been easily prevented through standard practices like the use of industry standard network segmentation and encryption of all Private Information—which TriZetto negligently failed to do and OCH failed to ensure that TriZetto did so.

---

[50] *See* Adnan Raja, *How to Safeguard Your Business Data With Encryption*, DATAINSIDER (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

[51] *See Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[52] *Id.* at 6.

31
CLASS ACTION COMPLAINT

116. Further, the scope of the Data Breach could have been dramatically reduced had OCH and TriZetto utilized proper record retention and destruction practices—but TriZetto negligently did no such thing and OCH failed to ensure that TriZetto utilized proper record retention and security safeguards.

**OCH Failed to Comply with HIPAA Under the Law and the Applicable Standards of Care.**

117. As the custodians of healthcare records handling medical patient data and providing services to hospitals and healthcare organizations, OCH is a covered entity under HIPAA (45 C.F.R. § 160.103). As such, OCH and TriZetto are required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

118. HIPAA's Privacy Rule establishes national standards for protecting health information, including health information that is kept or transferred in electronic form.

119. OCH and TriZetto are required to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

120. "Electronic protected health information" is "individually identifiable health information . . . that is: (i) transmitted by electronic media; [or] (ii) maintained in electronic media[.]" 45 C.F.R. § 160.103.

121. The HIPAA Security Rule, 45 C.F.R. Part 164, Subpart C, requires OCH and TriZetto to:

CLASS ACTION COMPLAINT

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information it or any business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information; and

d.    Ensure compliance by its workforce.

122.    HIPAA also requires OCH to ensure that TriZetto "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information[.]" 45 C.F.R. § 164.306(e).

123.    Additionally, HIPAA requires OCH to ensure that TriZetto "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights[.]" 45 C.F.R. § 164.312(a)(1).

124.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires OCH and TriZetto to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of [the] breach[.]" Upon information and belief, OCH has not provided notice of the Breach to affected individuals including Plaintiff and Class Members.

125.    OCH was also prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce[.]" The FTC has concluded that a company's failure to maintain reasonable and appropriate data

33

CLASS ACTION COMPLAINT

security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

126. OCH is further required by various states' laws and regulations to protect Plaintiff' and Class Members' Private Information.

127. Defendant owed a duty to Plaintiff and the Class to ensure that TriZetto design, maintain, and test its computer and email systems to ensure that the Private Information in its possession and control was adequately secured and protected.

128. Defendant owed a duty to Plaintiff and the Class to ensure that TriZetto create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training their employees (and any others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

129. Defendant owed a duty to Plaintiff and the Class to ensure that TriZetto act upon data security warnings and alerts in a timely fashion.

130. Defendant owed a duty to Plaintiff and the Class to ensure TriZetto adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

131. Defendant owed a duty to Plaintiff and the Class to ensure TriZetto disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in individuals' decisions to entrust Defendant with their Private Information.

132. Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

133. OCH is a sophisticated organization with the resources to ensure the entities it hired deployed robust cybersecurity protocols. OCH knew, or should have known, that hiring an entity

34

CLASS ACTION COMPLAINT

that used such protocols was necessary to fulfill their statutory, regulatory, and common law duties to Plaintiff and Class Members. OCH's failure to ensure TriZetto did so is, therefore, intentional, willful, reckless and/or grossly negligent.

134.    OCH was on notice that failing to take the necessary steps to ensure TriZetto secured Plaintiff's and Class Members' Private Information left that information in a dangerous condition.

135.    OCH disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to ensure TriZetto had adequate data security; (ii) failing to investigate and confirm TriZetto's network servers were protected against unauthorized intrusions; (iii) failing to disclose that TriZetto did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iv) failing to ensure TriZetto took standard and reasonably available steps to prevent the Data Breach; (v) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (vi) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

136.    Defendant beached the duties owed to Plaintiff and the Class and the Breach is the proximate cause of Plaintiff' and Class Members' injuries.

137.    The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction, *infra*, and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or

closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

<strong><u>PLAINTIFF' INDIVIDUAL EXPERIENCE</u></strong>

**Plaintiff Scott Carucci**

138. OCH required Plaintiff to provide his Private Information to OCH in order to provide medical services. TriZetto also acquired, collected, and stored Plaintiff's and Class Members' Private Information through the management services it provided to OCH. OCH is obligated by law, regulations, and guidelines to ensure TriZetto maintained adequate data security for Plaintiff and the Class.

139. Plaintiff Carucci is a patient of OCH. Upon information and belief, OCH provided Plaintiff Carucci's Private Information to TriZetto as a third-party vendor for management services.

140. Plaintiff Carucci entrusted his Private Information to OCH, as the record custodian of his Private Information, with the reasonable expectation and mutual understanding that OCH would keep his Private Information secure from unauthorized access.

141. By soliciting and accepting Plaintiff Carucci Private Information, OCH agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

142. Upon information and belief, OCH and TriZetto were in possession of Plaintiff Carucci's Private Information before, during, and after the Data Breach.

143. Upon information and belief, Plaintiff Carucci is a victim of the Data Breach.

144. Following the Data Breach, Plaintiff Carucci made reasonable efforts to

36

mitigate the impact of the Data Breach, including, but not limited to researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and reviewing his credit reports. Plaintiff Carucci has spent at least **two (2) hours** responding to the Data Breach.

145.    As a result of the Data Breach, and upon information and belief, Plaintiff Carucci has noticed an increase in spam phone calls, texts, and emails which he did not receive prior to the Breach.

146.    Plaintiff Carucci will be forced to spend additional time reviewing his credit reports and monitoring his accounts for the rest of his life. This is time which has been lost forever and cannot be recaptured.

147.    Plaintiff Carucci places significant value in the security of his Private Information and does not readily disclose it. Plaintiff Carucci entrusted OCH with his Private Information with the understanding that OCH would keep his information secure and would employ reasonable and adequate data security measures to ensure that his Private Information would not be compromised.

148.    Plaintiff Carucci has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

149.    As a direct and traceable result of the Data Breach, Plaintiff Carucci suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of his

CLASS ACTION COMPLAINT

bargain because OCH and TriZetto did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his first and last name paired with his Social Security number and other sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that OCH and TriZetto obtained from Plaintiff Carucci; and (g) other economic and non-economic harm.

150.    Plaintiff Carucci has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.

151.    OCH breached its duties to Plaintiff Carucci by failing to ensure that TriZetto had adequate security measures to protect Plaintiff Carucci's Private Information from unauthorized disclosures

152.    Plaintiff Carucci has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of OCH and TriZetto is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Carucci's Private Information will be wholly unprotected and at-risk of future data breaches.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

153.    Plaintiff incorporates by reference all preceding factual paragraphs as if fully restated here.

154.    Plaintiff brings this action against Defendant on behalf of himself, and all other individuals similarly situated under Cal. Civ. Pro. Code §382. Plaintiff assert all claims on behalf of a class (the "Class") defined as follows:

> **All individuals whose Private Information was accessed and/or acquired in the Data Breach, including all individuals who received a Notice of Data Breach letters.**

155.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff members.

156.    Plaintiff reserves the right to amend or modify the above Class definition or to propose subclasses in subsequent pleadings and motions for class certification.

157.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendant's own business records or electronic media can be utilized for the notice process.

158.    The proposed Class meets the requirements of Cal. Civ. Pro. Code §382.

159.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. While the exact number is unknown to Plaintiff, it is believed that the Breach affected thousands of individuals whose Private Information was stored and maintained within TriZetto's network and systems, including OCH's patients. The identities

of Class members are ascertainable through Defendant's records, Class members' records, publication notice, self-identification, and other means

160.    **Typicality:** Plaintiff's claims are typical of the claims of the Class because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff and all members of the Class were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that gives rise to the claims of all Class Members.

161.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and highly experienced in data breach class action litigation, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

162.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for individual members of the Class to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the

CLASS ACTION COMPLAINT

class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

163. **Commonality and Predominance:** Defendant engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' Private Information was stored on the same network and unlawfully accessed in the same way. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    a. Whether Defendant engaged in the wrongful conduct alleged herein;

    b. Whether Defendant owed a duty to Plaintiff and Class Members to adequately protect their Private Information;

    c. Whether Defendant breached its duties to Plaintiff and Class Members to adequately protect their Private Information;

    d. Whether Defendant's failure to ensure TriZetto implemented adequate data security measures was a cause of the Data Breach;

    e. Whether Defendant failed to ensure that TriZetto's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    f. Whether Defendant failed to ensure TriZetto's data security systems prior to and during the Data Breach were consistent with industry standards;

41

CLASS ACTION COMPLAINT

g.  Whether Defendant knew or should have known that TriZetto's computer and network security systems, or the computer and network security systems of its vendors, were vulnerable to cyberattacks;

h.  Whether Defendant conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

i.  Whether Defendant was negligent in permitting unencrypted Private Information belonging to its patients to be stored within TriZetto's network;

j.  Whether Defendant was negligent in failing to ensure that TriZetto adhere to reasonable data retention policies;

k.  Whether Defendant breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their Private Information;

l.  Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class Members;

m.  Whether Defendant and TriZetto should have discovered the Data Breach sooner;

n.  Whether Defendant and TriZetto failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

o.  Whether Defendant continues to breach duties owed to Plaintiff and the Class;

p.  Whether Plaintiff and the Class suffered injuries as a proximate result of Defendant's negligent actions or failures to act;

CLASS ACTION COMPLAINT

q. Whether Defendant were negligent in selecting, supervising, and/or monitoring vendors;

r. Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

s. Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

164. Defendant have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class wide basis.

165. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

166. Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

167. OCH gathered and stored the Private Information of Plaintiff and Class members as part of its business practices, which was in turn provided to TriZetto so that TriZetto could provide management services to OCH.

168. OCH had full knowledge of the sensitivity of the Private Information that OCH possessed and provided to TriZetto and the potential harm that Plaintiffs and Class Members could and would suffer if their Private Information were wrongfully disclosed by

43

OCH or TriZetto.

169.    Upon accepting and storing Plaintiff' and Class Members' Private Information on their computer systems and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from unauthorized access and disclosure.

170.    OCH had a duty to Plaintiff and Class Members to exercise reasonable care in selecting, monitoring, and ensuring any management service providers it hired used adequate data security, procedures, and protocols to prevent foreseeable harm to Plaintiff and the Class pursuant to the provisions of the FTC and HIPAA.

171.    OCH had a common law duty to exercise reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when selecting a management provider, such as TriZetto, to provide technology and management services that included TriZetto storing, safeguarding, handling, collecting, and protecting the Private Information provided by Plaintiffs and the Class. This duty included taking action to ensure TriZetto adequately safeguarded such data, that TriZetto was aware of its security requirements under the FTC and HIPAA, and that TriZetto implemented the security requirements required by the FTC and HIPAA. OCH utterly failed to do any of the above.

172.    OCH was also responsible for providing timely notification of the Data Breach to Plaintiff and Class Members but failed to do so.

CLASS ACTION COMPLAINT

173. OCH was in a superior position to ensure TriZetto's data security practices were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

174. Defendant knew Plaintiff and Class Members relied on it to protect their Private Information. Plaintiff and Class Members were not in a position to assess the data security practices used by TriZetto. Because they had no means to identify TriZetto's security deficiencies, Plaintiff and Class Members had no opportunity to safeguard their Private Information from cybercriminals. Defendant exercised control over the Private Information stored on in TriZetto's systems and networks; accordingly, Defendant was best positioned and most capable of preventing the harms caused by the Data Breach.

175. Defendant was aware, or should have been aware, of the fact that cybercriminals routinely target healthcare entities through cyberattacks in an attempt to steal valuable Private Information. In other words, OCH knew of a foreseeable risk to TriZetto's data security systems but failed to ensure that TriZetto implemented reasonable security measures.

176. Defendant's duties extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to such risk, or defeats protections put in place to guard against that risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

45

177. Defendant had a duty to protect and safeguard the Private Information of Plaintiff and the Class from unauthorized access and disclosure. Additionally, Defendant owed Plaintiff and the Class a duty to ensure that TriZetto:

    a.    exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

    b.    protect Plaintiff's and Class Members' Private Information by using reasonable and adequate data security practices and procedures;

    c.    implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

    d.    promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

178. Defendant breached its duties, and thus was negligent, by failing to ensure that TriZetto use reasonable measures to protect Plaintiff's and Class Members' Private Information.

179. Defendant's willful failure to abide by its duties to Plaintiff and Class Members was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

CLASS ACTION COMPLAINT

180. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.

181. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

182. As a direct and proximate result of Defendant's negligent conduct, including, but not limited to, its failure to ensure TriZetto implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

183. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigate the impact of the Data Breach.

184. Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

185. Plaintiff and Class Members could have enrolled in credit monitoring, instituted credit freezes, and changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

186. Plaintiff and Class Members suffered harm from Defendant's delay in notifying them of the Data Breach.

187. As a direct and proximate result of Defendant's conduct, including, but not limited to, Defendant's failure to ensure TriZetto implement and maintain reasonable data

47
CLASS ACTION COMPLAINT

security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's and TriZetto's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its and TriZetto's continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

188.    The damages Plaintiff and the Class have suffered and will suffer (as alleged above) were and are the direct and proximate result of Defendant's negligent conduct.

CLASS ACTION COMPLAINT

189.    Plaintiff and the Class have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

190.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

191.    Defendant had a duty to ensure that TriZetto implement and maintain reasonable data security practices pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect sensitive and confidential data.

192.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII/PHI. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

193.    Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information as part of its regular business, which affects commerce.

194.    Defendant violated the FTC Act by failing to ensure that TriZetto use reasonable measures to protect Plaintiff' and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein.

195.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to ensure that TriZetto implement and maintain fair, reasonable, and adequate data

49
CLASS ACTION COMPLAINT

security practices to safeguard Plaintiff' and Class Members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

196.    Defendant's multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

197.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

198.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, like Defendant, that fail to employ reasonable data security measures and avoid unfair and deceptive practices, causing the same harm as that suffered by Plaintiff and the Class.

199.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

200.    Defendant's violations of the FTC Act constitute negligence *per se*.

201.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

202.    Defendant also had a duty to ensure that TriZetto used reasonable security measures under HIPAA, which requires covered entities that handle and/or store medical records of patients/customers, like Defendant, to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate

CLASS ACTION COMPLAINT

administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this action constitutes "protected health information" within the meaning of HIPAA.

203.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information. HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.304, 45 C.F.R. § 164.306(a)(1-4), 45 C.F.R. § 164.312(a)(1), 45 C.F.R. § 164.308(a)(1)(i), 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

204.    Defendant failed to ensure that TriZetto complied with HIPAA regulations.

205.    Defendant's violations of HIPAA constitute negligence *per se*.

206.    Plaintiff and the Class are within the class of persons HIPAA was intended to protect.

207.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

208.    Defendant's duty to ensure its vendor use reasonable care in protecting Plaintiff' and Class Members' Private Information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect and secure Private Information in its possession and control.

209.    Defendant reasonably knew, or should have known, of the risk of harms to

CLASS ACTION COMPLAINT

Plaintiff and Class Members in an event of a breach and exfiltration of Private Information.

210.   Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer imminent and impending injuries arising from the increased risk of future fraud and identity theft.

211.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

212.   Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

213.   Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

214.   Plaintiff and Class Members were required to provide their Private Information to Defendant in connection with the services Defendant provided.

215.   Defendant solicited and accepted possession of Plaintiff's and Class Members' Private Information, and in turn, provided the Private Information to TriZetto for management services.

216.   Defendant impliedly promised and represented to protect Plaintiff's and Class members' Private Information and ensure that any vendor Defendant hired had adequate data security measures to protect the Private Information.

217.   In delivering, directly or indirectly, their Private Information to Defendant and paying for healthcare services, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard their Private Information.

52

CLASS ACTION COMPLAINT

218.    Plaintiff and Class Members reasonably expected that the Private Information they entrusted to Defendant and to its vendor, in order to receive medical services, would remain confidential and would not be shared or disclosed to criminal third parties.

219.    Plaintiff and Defendant had a mutual understanding that Defendant's vendor would implement and maintain adequate and reasonable data security practices and procedures to protect Plaintiff's and Class Members' sensitive Private Information. Plaintiff and Defendant also shared an expectation and understanding that Defendant's vendor would not share or disclose, whether intentionally or unintentionally, the sensitive Private Information in its possession and control.

220.    Based on Defendant's representations, legal obligations, and acceptance of Plaintiff's and Class Members' Private Information, Defendant had a duty to safeguard the Private Information in its possession and ensure that its vendor used reasonable data security practices.

221.    When Plaintiff and Class Members paid money and provided their Private Information to Defendant, either directly or indirectly, in exchange for goods or services, they entered into implied contracts with Defendant.

222.    Defendant entered into implied contracts with Plaintiff and the Class under which Defendant agreed to comply with its statutory and common law duties to safeguard and protect Plaintiff's and Class Members' Private Information and to timely notify Plaintiff and Class Members of a data breach.

223.    The implied promise of confidentiality includes consideration beyond those pre-existing duties owed under Section 5 of the FTC Act, HIPAA, and other state and federal

53

CLASS ACTION COMPLAINT

regulations. The additional consideration included implied promises to take adequate steps to ensure that Defendant's vendor comply with specific industry data security standards and FTC guidelines on data security.

224.    Defendant's implied promises include, but are not limited to: (i) taking steps to ensure any agents or vendors who are granted access to Private Information protect the confidentiality of that information; (ii) taking steps to ensure that Private Information in the possession and control of Defendant, its agents, and/or vendors is restricted and limited to achieve an authorized medical purpose; (iii) restricting access to qualified and trained agents and/or vendors; (iv) designing and implementing appropriate retention policies to protect the Private Information from unauthorized access and disclosure; (v) applying or requiring proper encryption of the Private Information; (vi) requiring multifactor authentication for access to the Private Information; and (vii) other steps necessary to protect against foreseeable data breaches.

225.    Plaintiff and Class Members (or their doctors and healthcare providers) would not have entrusted their Private Information to Defendant in the absence of such implied contracts.

226.    Defendant recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance to Plaintiff and Class Members.

227.    Had Defendant disclosed to Plaintiff and Class Members (or their doctors and healthcare providers) that TriZetto did not have adequate data security practices to secure

54
CLASS ACTION COMPLAINT

their Private Information, Plaintiff and Class Members (or their doctors and healthcare providers) would not have provided their Private Information to Defendant.

228. Plaintiff and Class Members (or their doctors and healthcare providers) fully performed their obligations under the implied contracts with Defendant.

229. Defendant breached the implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

230. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members have suffered damages, including foreseeable consequential damages that Defendant knew about when it solicited and collected Plaintiff' and Class Members' Private Information.

231. Alternatively, Plaintiff and Class Members were the intended beneficiaries of data protection agreements entered into between Defendant and TriZetto.

232. Plaintiff and the Class have suffered injuries as described herein, and are entitled to actual and punitive damages, statutory damages, and reasonable attorneys' fees and costs, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

233.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

234.    Plaintiff alleges this claim in the alternative to his breach of implied contract claim.

235.    Plaintiff and Class Members conferred a benefit on Defendant by way of providing their Private Information to Defendant as part of Defendant's business.

236.    Defendant required Plaintiff's and Class Members' Private Information to conduct their business and generate revenue, which it could not do without collecting and maintaining Plaintiff's and Class Members' Private Information.

237.    By conferring their Private Information to Defendant, directly or indirectly, Plaintiff and Class Members reasonably understood Defendant would be responsible for securing their Private Information from unauthorized access and disclosure and ensure any vendor Defendant used would comply with FTC and HIPAA cybersecurity regulations and guidelines.

238.    Plaintiff and Class Members paid a certain sum of money to Defendant, which was used to fund adequate data security.

239.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class was to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

240.    There is a direct nexus between money paid to Defendant and the requirement for Defendant to use a vendor that would keep Plaintiff's and Class Members' Private

CLASS ACTION COMPLAINT

Information confidential and protected from unauthorized access and disclosure.

241. Protecting the Private Information of Plaintiff and Class Members is integral to Defendant's business. Without their Private Information, Defendant would be unable to provide services comprising Defendant's core business.

242. Plaintiff's and Class Members' Private Information have monetary value.

243. Defendant solicited, collected, stored, and maintained Plaintiff' and Class Members' Private Information, and as such, Defendant had direct knowledge of the monetary benefits conferred upon it by Plaintiff and the Class. Defendant profited from these transactions and used Plaintiff' and Class Members' Private Information for business purposes.

244. Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

245. Defendant enriched itself by saving the costs it reasonably should have expended on hiring a vendor that used adequate data security measures to secure Plaintiff's and Class Members' Private Information. TriZetto did not implement adequate security measures to protect Plaintiff's and Class Members' Private Information, and OCH failed to contract with a vendor with adequate security safeguards. Instead of providing a reasonable level of security that would have prevented the Data Breach, OCH instead calculated to increase its own profit at the expense of Plaintiff and Class Members by hiring a vendor that utilized cheaper, ineffective security measures that did not have adequate security safeguards and allowed the Breach to occur.

246. Plaintiff and Class Members, on the other hand, suffered as a direct and

CLASS ACTION COMPLAINT

proximate result of Defendant's decision to prioritize their own profits over the requisite security and the safety of their Private Information.

247. Defendant failed to ensure that TriZetto provide reasonable security safeguards and protect the Private Information of Plaintiff and Class Members, and as a result, Defendant were overpaid.

248. Under the facts and circumstances outlined above, however, it is inequitable for Defendant to retain that benefit without payment of the value thereof.

249. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to ensure that its vendor implement appropriate data management and security measures sufficient to protect against unauthorized access.

250. Defendant acquired Plaintiff's and Class Members' Private Information through inequitable means in that it failed to disclose TriZetto's inadequate data security practices, as previously alleged.

251. If Plaintiff and Class Members knew that Defendant and TriZetto would not secured their Private Information, they would not have allowed Defendant to collect their Private Information.

252. Plaintiff and Class Members have no adequate remedy at law.

253. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm (as alleged above).

CLASS ACTION COMPLAINT

254.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, all gains that it unjustly received.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class)**

255.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

256.    In light of the special relationship between Defendant, as custodian of Private Information and medical records, and Plaintiff and Class Members, Defendant became a fiduciary by undertaking a guardianship of Plaintiff's and Class Members' Private Information.

257.    A custodian of customer's or patient's medical records has a fiduciary duty to not disclose a customer's or patient's medical information.

258.    Defendant became a fiduciary, created by its undertaking and guardianship of Plaintiff's and the Class Members' Private Information, to act primarily for the benefit of Plaintiff and Class Members.

259.    This duty included the obligation and responsibility for OCH to ensure that TriZetto:

a.    safeguard Plaintiff's and Class Members' Private Information;

b.    timely detect and notify Plaintiff and the Class in the event of a data breach;

c.    only utilize vendors with adequate data security infrastructure, procedures,

CLASS ACTION COMPLAINT

and protocols;

d.    establish and implement appropriate oversight and monitoring procedures for the activities of its vendors.

260.    Plaintiff and the other Class Members gave Defendant their Private Information believing that Defendant would protect that information. Plaintiff and the other Class members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff's and the other Class Members' Private Information created a fiduciary relationship between Defendant on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of Plaintiff and Class members.

261.    Defendant knowingly undertook the responsibility and duties related to the possession of Plaintiff's and Class Members' Private Information, for the benefit of Plaintiff and Class Members.

262.    Defendant undertook the responsibility to hire a vendor that complied with FTC, HIPAA, and industry standards security measures and protect the Private Information of Plaintiff and the Class.

263.    Defendant had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship with them.

264.    Defendant breached the fiduciary duties it owed to Plaintiff and Class Members by failing to protect Plaintiff's and Class Members' Private Information and by failing to ensure the TriZetto adequately protected the Private Information it received from

60
CLASS ACTION COMPLAINT

OCH (as alleged above).

265.    Defendant further breached the fiduciary duties it owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

266.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

### SIXTH CAUSE OF ACTION
### NEGLIGENT TRAINING, HIRING, AND SUPERVISION
### <u>(On Behalf of Plaintiff and the Class)</u>

267.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

268.    At all relevant times, TriZetto was OCH's agent. OCH granted TriZetto access to the Private Information of Plaintiff and the Class without properly vetting TriZetto, inquiring about/ investigating TriZetto's data security, training TriZetto, advising TriZetto of its duties owed to Plaintiff and the Class under the FTC and HIPAA, and/or advising TriZetto of the confidential nature of Plaintiff's and the Class's Private Information.

269.    OCH was negligent and failed to exercise the requisite standard of care in the hiring, supervision, and retention of TriZetto – who disclosed Plaintiffs' and the Class's Private Information without authorization and caused the damages delineated herein by virtue of the Data Breach.

270.    At all times relevant hereto, Defendant OCH owed a duty to Plaintiffs and the Class to train and supervise its agents and third parties handling sensitive Private Information

CLASS ACTION COMPLAINT

in its possession to ensure they recognized the duties owed to Plaintiff and the Class to keep their Private Information safe from data breaches.

271. OCH owed a duty to Plaintiff and the Class to ensure TriZetto had adequate data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's Private Information from data breaches prior to hiring TriZetto.

272. OCH also owed a continuing duty to Plaintiff and the Class to ensure TriZetto continued to employ adequate data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's Private Information from data breaches after hiring TriZetto.

273. OCH breached this duty by failing to ensure TriZetto possessed the requisite data security, procedures, practices, infrastructure, and protocols to protect Plaintiff's and the Class's Private Information from data breaches prior to hiring TriZetto and while TriZetto worked for OCH.

274. OCH was on notice of the importance of data security because of well publicized data breaches occurring throughout the United States and because of the FTC publications on data breaches. Despite knowledge of prior data breaches, Defendant failed to ensure TriZetto possessed the adequate security posture to protect Plaintiff's and the Class's Private Information from unauthorized disclosure.

275. Defendant knew or should have known that the failure to ensure TriZetto employed adequate data security, procedures, and protocols would create an unreasonable risk of danger to persons and property.

276. As a direct and proximate result of Defendant's breach of its duties, and its negligent hiring, training, selection, and supervision, of TriZetto, which resulted in the

62

CLASS ACTION COMPLAINT

disclosure of Plaintiff's and Class members' confidential Private Information in the Data Breach, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, diminution in value of their Private Information, and actual misuse of their Private Information.

277. Defendant was advised of the Data Breach through online publication, but continued to employ TriZetto, putting Plaintiff and the Class at risk of more data breaches in the future.

278. The acts and omissions of Defendant in negligently hiring, retaining, training, and/or supervising TriZetto are such as to show gross negligence and reckless disregard for the safety of others and, therefore, punitive damages are appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.    For an order certifying this action as a Class Action under Cal. Civ. Pro. Code §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.    For a judgment in favor of Plaintiff and the Class, awarding them appropriate monetary relief, including compensatory damages, punitive damages, nominal damages, attorneys' fees, expenses, costs, and such other and further relief as is just and proper;

CLASS ACTION COMPLAINT

c.    For an order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.    For an order requiring Defendant to pay the costs involved in notifying the Class about the judgment and administering the claims process;

e.    For a judgment in favor of Plaintiff and the Class, awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.    For an award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues raised in this Class Action Complaint so triable as of right.

Dated:  January 15, 2026                    Respectfully submitted,


By:  _____
     Christopher Frost
     Kevin S. Dicker
     FROST LLP

     Jessica A. Wilkes (*Pro Hac Vice Forthcoming)*
     Jonathan Herrera (*Pro Hac Vice Forthcoming*)
     FEDERMAN & SHERWOOD

     Attorneys for SCOTT CARUCCI and the
     Proposed Class

64
CLASS ACTION COMPLAINT